## SOLOMON SPICER *v.* J. A. JARRETT.

BILLS AND NOTES. *Usury. May be recovered. By whom.* Where a party has paid usurious interest, his right to recover the same may be assigned, if the transfer be an absolute and unconditional sale of all interest in the judgment that might be recovered.

Cases cited: Morrison *v.* Deaderick, 10 Hum., 344; 2 Story's Eq. Jur., § 1040, 8, 50; Prosser *v.* Edmonds, 1 Young & Coll., 481.

Code cited: § 1955.

FROM CANNON.

Appeal from the Chancery Court. B. M. TILLMAN, Chancellor.

CANTRELL & SANDERS for Spicer.

JNO. W. BURTON for Jarrett.

NICHOLSON, C. J., delivered the opinion of the Court.

Spicer filed his bill in the Chancery Court at Woodbury, against the executors of D. M. Jarrett, to

Solomon Spicer *v.* J. A. Jarrett.

recover several hundred dollars of usury, paid by him to D. M. Jarrett, in his life-time. After proof had been taken, showing that the executors were liable for usury as charged, Spicer, being about to remove from the county, for value received, transferred to W. H. and S. B. McFerrin a judgment, that he might recover in said suit. This transfer was evidenced by a written assignment and by an order on Spicer's solicitors for the amount they might collect in the suit.

These facts being brought out on petition, the Chancellor dismissed complainant's bill, holding that "the purchase by W. H. and S. B. McFerrin of complainant of his right to prosecute this suit is illegal, as savoring of maintenance."

The case of *Morrison* v. *Deaderick*, 10 Hum., 344, is relied on to sustain the decree of the Chancellor. In that case Geo. M. Deaderick had filed his bill against Morrison to recover money fraudulently and oppressively extorted from him by Morrison, under the pretext of a sale of goods. The Court held that Geo. M. Deaderick's right to prosecute the suit was not such a right as could be assigned. Fielding Deaderick claimed to be the assignee of the right to prosecute the suit after the death of Geo. M. Deaderick.

The Court based their decision upon Section 1040, of 2 Sto. Eq. Jur., where it is laid down that an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor, will be

held void, as contrary to public policy, and as savoring of the character of maintenance. The Court also quoted and relied on the case of *Prosser* v. *Edmonds*, 1 Young & Coll., 481, in which Lord Abinger says, that where an equitable interest is assigned, in order to give the assignee a *locus standi* in a Court of Equity, the party assigning such right must have some substantial possession, some capability of personal enjoyment, and not a mere right to overset a legal instrument or to maintain a suit."

Upon these authorities the Court held that the assignment from George M. to Fielding Deaderick was void.

It is obvious that the Court proceeded in that case upon the ground that Geo. M. Deaderick had nothing more than a mere naked right to maintain a suit to recover the money fraudulently extorted from him; this was a personal right which died with him, and could be enforced by none but himself.

But by our statute usurious interest paid may be recovered at the suit of the party from whom it was taken, or his representatives, or it may be subjected by any judgment creditor of such party to the satisfaction of his debt. Code, § 1955.

When usurious interest is paid or received, the party receiving it holds it for the use and benefit of the party paying it. The law recognizes it as an indebtedness which passes to the representatives of the paying party and which he may enforce, as well as the party himself, and which his judgment creditor

can reach. It follows that such a claim may be assigned without violating the rule laid down in the case of *Morrison* v. *Deaderick.*

But the question still remains whether the transfer of his right, to recover from Jarrett, was champertous or tainted with maintenance?

Champerty is a bargain with a plaintiff or defendant in a cause to divide the matter sued for, if they prevail, whereupon the champertor is to carry on the party's suit at his own expense.   2 Story Eq., 1048. Maintenance is an officious intermeddling in a suit which no way belongs to one by maintaining or assisting either party, with money or otherwise, to prosecute or defeat it.   2 Story Eq., 1048.

It appears from the proof that the assignment by Spicer to the McFerrins was absolute and unconditional of all his interest in the judgment that might be recovered, and that $25 was paid for the assignment.   In Sec. 1050, 2 Story Eq., it is said:   "A party may purchase by assignment the whole interest of another in a contract, or security, or other property, which is in litigation, provided there be nothing in the contract which savors of maintenance; that is, provided he does not undertake to pay any costs or make any advances beyond the mere support of the exclusive interest which he has so acquired."

According to the evidence of the two McFerrins, they purchased whatever judgment Spicer might recover for $25, which they paid, and they assumed no obli-

gation to pay costs or to give any larger sum in the event of the recovery of a greater amount. It was the purchase of Spicer's right of recovery, taking the chances of the result. If the suit was gained, they took all that was recovered except the solicitor's fees. If the suit was lost, their $25 paid was lost. In other words, they risked $25 upon the chance of getting several hundred dollars.

It appears that Spicer was a drinking man; was about to move from the country; and the inference from all the circumstances is, that he was pressed for means. We find him calling on one of the McFerrins (Wm. H.) for $10 the morning he left the county. McFerrin at first refused, but afterwards, in the same conversation, told Spicer if he would let it go upon that " trick "—referring to the Jarrett suit—he would let him have $10. Spicer agreed and McFerrin paid him $10.

It appears also, from the statements of Spicer, made at the depot at Murfreesboro when about starting away, that he had sold the McFerrins four lawsuits, and he was sorry that one of them (Wm. H.) was into it, but as to the other two, he hoped they would lose them, for they had not given him much. He referred, in this connection, to the Jarrett suit. While conversing, Wm. McFerrin came up, when Spicer commenced praising him for being such a clever fellow, and said he had brought him and his family to Union City, and had made him a present

Solomon Spicer *v.* J. A. Jarrett.

of it.    Wm. McFerrin was one of the two brothers that he had just hoped would lose their suits. Spicer was then drinking or drunk.

It appears that Spicer left the country and has had nothing more to do with the suit; nor was his testimony taken as to the character of the assignment, although he is said to be still living in West Tennessee.    Viewing all these facts and circumstances, in connection with the fact that one of the McFerrins was Spicer's security for costs, and that the two McFerrins were the main witnesses to prove the usury, we can not resist the conclusion that this transaction was not a *bona fide* assignment of Spicer's claims, but, in the language of one of the McFerrins, a "trick" to get control of the suit and to divide the spoils.    We can not but regard the fact that on the morning when Spicer started he called on W. H. McFerrin to give him $10; his refusal, and then consenting, upon Spicer's agreeing to let it go on the Jarrett suit, as evidence that there was an understanding that the $25 was not all that Spicer was to have, in the event the suit should be successfully prosecuted.    As we understand the proof, the $25 had already been paid, yet he gives Spicer $10 more on his agreeing to let it go on the Jarrett suit.    This is suggestive of a conditional or contingent transfer of the claim, savoring strongly of champerty or maintenance.

We are, therefore, of opinion that there was no error in the decree of the Chancellor, and affirm it with cost.