SEYMOUR A. BERGER et al. v. MRS. MARY L. PAALZOW et al.—289 S. W. (2d) 861.

Eastern Section. January 11, 1956.

Petition for Certiorari denied by Supreme Court, April 5, 1956.

154

Chambliss, Chambliss & Brown, Chattanooga, for appellants.

Curry & Harris, Chattanooga, for appellees.

HOWARD, J. This suit seeks either specific performance of an agreement to lease the James Building, a large office building in the City of Chattanooga, or in the alternative damages for breach of said agreement. The parties will be referred to as they appeared below.

The suit was filed by the complainants, Seymour A. and Jerome Berger, brothers, for the use and benefit of their niece, Halina Berger, all residents of the State of New York, against Mrs. Mary L. Paalzow, her son John F. Paalzow, Jr., and her daughter, Betty Paalzow Farr, owners of the James Building, and residents of Hamilton County, Tennessee.

The agreement sought to be enforced is predicated upon an offer to lease said building, which offer was made in a letter written by the Berger brothers to the Paalzows, a reply from the Paalzows with modifications, and acceptance by the Berger brothers of the modifications.

Four defenses were interposed by the defendants: (1) that the correspondence between the parties did not constitute an agreement, but was merely preliminary negotiations not binding on either side; (2) there was no agreement to substitute Halina Berger as Lessee;

(3) that George H. Farr was not authorized to sign the original acceptance on behalf of his wife, Betty Paalzow Farr; and (4) that complainants cannot maintain the suit for the benefit of Halina Berger.

The Chancellor held that the defendants had no intention of giving Berger brothers the right to substitute Halina Berger, as Lessee, and that the agreement did not confer that right. Accordingly, the bill was dismissed and this appeal by complainants resulted.

In order to give a complete picture of the negotiations leading up to the alleged agreement sought to be enforced, the letters, with emphasis supplied by us, are copied herein, as follows:

"July 24, 1953

"Mr. George H. Farr, Agent

"James Building

"Chattanooga, Tennessee

"Dear Mr. Farr:

"Confirming *our* conversation with you of yesterday, *we* hereby offer to lease the entire James Building Annex and grounds for a period of thirty (30) years, beginning October 1, 1953, said lease to contain three (3) ten (10) year options on *our* part to extend said lease.

"*We* agree to maintain the building in good operating condition and to deliver same to you at the expiration of the lease in as good condition as when received, ordinary wear and tear excepted.

"*We* agree to pay all property taxes, carry public liability and elevator liability insurance, with limits of at least $100,000 and $300,000. *We* also agree to

carry workmens compensation insurance on the employees, boiler insurance, and 80% fire and extended coverage insurance, with the amount of the insurance coverage to be determined by a competent architect or contractor at least each five (5) year period during the term of the lease.

"*We* expect to pay all costs in connection with the property with the exception of interest and principal payments on any mortgage which you may have against the property, and *we* would expect you *to* deliver to *us* the property free from any liens or accounts payable with the exception of the first mortgage which *we* understand to be $75,000.00.

"*We* would expect to pay you the inventory value for supplies on hand, including coal, cleaning and rest room supplies, and to pro rate the 1953 taxes and insurance on the property, and for you to credit *us* with any rents beyond October 1, 1953. Any accounts payable to you prior to October 1, 1953, would be due and payable to the owners. *We* would expect you to leave all building equipment, including doors, windows, tools and other equipment in the building to be used by *us* if necessary, during the term of the lease. In event you are holding any deposits by tenants for keys or other items, *we* would expect you to turn same over to *us* as of October 1, 1953. You are to furnish *us* with a list of all outstanding leases, both written and verbal.

"This offer is made contingent on the Pioneer Bank subleasing from *us* with the approval of the owners, the entire first floor space from January 1, 1954, to October 1, 1983, at the rate of Thirty Two

Thousand Five Hundred ($32,500.00) Dollars annually, payable monthly in advance, with the Bank having permission to remodel and improve the space occupied by them.

"It is understood and agreed that both *we,* as tenant, and the Bank, as sub-tenant, will have the right to make alterations and improvements. In the case of any material alterations, *we* would expect to furnish the owners with plans for their approval, and that approval will not be unreasonably withheld but will be given *us* within a period of ten (10) days from the date of submission. *We* would expect to assign the least from the Bank to the owners in case of default on *our* part.

"*We* have not inspected your leases, but it is *our* understanding from you that all leases below the second floor, including the Annex, expire at the end of 1953, and that there are no long term leases above the first floor and that none will be made between now and October 1, 1953. If there are any outstanding leases which terminate on or before January 1, 1954, on which notices need be given in order to terminate same on the first floor prior to October 1, 1953, in event of acceptance by you notice of such termination will be given by you.

"*We* agree to pay for the thirty (30) year period One Million Five Hundred Thousand ($1,500,000.00) Dollars net rental to the owners, payable at the rate of Fifty Thousand ($50,000.00) Dollars per year, and divided into monthly payments to be made in advance. The rental shall be subject to an increase or decrease in proportion to any increase or decrease

as determined by the Consumers Price Index as now established, published monthly by the Department of Labor or the United States Government, said adjustment to be made on an annual basis as of October 1st, of each year, commencing October 1, 1954, based on the proportionate increase or decrease as published on July 1st of each year.

"We agree to deposit cash or United States Government Bonds in the amount of One Hundred Thousand ($100,000.00) Dollars upon execution of the lease. Said deposit shall be made in escrow at the Pioneer Bank, or such other escrow agent as may be mutually agreed upon by you and *ourselves*. This deposit in escrow shall be made as a guarantee to the owners and shall be subject to withdrawal by the owners should *we fail* to comply with the terms of *our* agreement relative to air conditioning, which is what *we* agree to completely air condition the building, excluding the basement, and to complete same on or before January 1, 1956, subject to strikes, obtaining priorities, if any, and *our* ability to secure labor and materials. It is understood and agreed that upon completion of said air conditioning the escrow deposit of One Hundred Thousand ($100,-000.00) Dollars shall be returned to *us*.

"We agree to install new boilers when necessary and to keep present elevators in good working condition, and to modernize them if necessary.

"We understand that you will deliver the building to us on October 1, 1953, in as good condition as at the present time, ordinary wear and tear excepted.

"It is understood that if this proposition be accepted lease embodying these and usual provisions will be executed by the *owners* of the building and *ourselves, or order, as tenants.*

"This offer is good until noon Friday, July 31, 1953. If accepted you will notify *us* in writing, signed by the owners, that it is accepted. If accepted, lease will be executed on or before October 1, 1953.

"Yours very truly,

"s// Seymour A. Berger
  Seymour A. Berger
"/s/ Jerome Berger
  Jerome Berger"

"July 31, 1953

"Mr. Jerome Berger
"Mr. Seymour A. Berger
"*c/o* C. V. Brown Brothers
"118 East 8th Street
"Chattanooga, Tennessee

"Gentlemen:

"We hereby accept *your* offer dated July 24th, 1953 to lease the James Building with the following exceptions and/or provisions:

"1. The lease is to be for thirty years and contains three ten year options on *your* part.

"(a) The rental for the first year shall be at the rate of $50,000.00 payable monthly to us in advance and rental for the next twenty-nine years shall be increased or decrease as determined by the Consumer's Price Index as now established and published

monthly by the Department of Labor of the United States Government. Said adjustment shall be on an annual basis commencing October 1st, 1954 based on the proportionate increase or decrease as published for the month of July of each year, in order to determine the October 1st of each year, and subject, however, to *your* paying us a minimum rental in any event of $40,000.00 per year and *your* paying us a maximum rental in any event of $60,000.00 per year.

"(b) In event *you* exercise any or all of *your* options to extend the lease beyond thirty years, the rental shall be determined by agreement and, failing to agree, shall be determined by arbitration.

"2. *You* shall maintain an escrow deposit of $100,000.00 in cash or United States Government bonds until the entire cost of installing air conditioning has been paid and certified receipts are furnished to the owners. Modern single system shall include heating for winter and cooling for summer.

"3. *You* are to continue throughout the term of the lease and option periods, if exercised, a full maintenance contract with Otis Elevator Company or other reputable elevator maintenance company as approved by us. All insurance policies should include owners as interests may appear.

"4. The lease and/or notice of lease to be put on record, shall contain a clause holding the owners harmless against any mechanics or material liens for improvements or materials made by *you* or *subtenants* during the period of the lease and/or option periods.

"5. All tools and other building equipment owned by us will be turned over to *you* for use; however, we wish to advise that most of the tools are owned by the building engineer or other employees.

"This acceptance of *your* proposal shall be for a period of one week from today, during which time we understand *you* expect to secure an acceptance of *your* offer to the Pioneer Bank for subleasing space to them.

"If *you* accept our modifications as herein outlined to *your* proposal, *you will* notify us in writing to that effect on or before noon, August 7, 1953. If accepted by *you* we understand that a formal lease contract embodying *our* agreement will be executed as soon as it can be prepared but in no event later than September 15, 1953.

"The Owners of the James Building would like to have Room 206 rent free to have and maintain for Mrs. Paalzow, for five years.

"Yours very truly,

"/s/ Mary L. Paalzow
"/s/ John F. Paalzow, Jr.
"/s/ Betty P. Farr by
"George H. Farr"

\*    \*    \*    \*    \*    \*

"August 5, 1953

"Mary L. Paalzow
"John F. Paalzow, Jr.
"Betty P. Farr
"*c/o* George H. Farr
"Chattanooga, Tennessee

"Dear Mr. Farr:

"*We* hereby *accept* the modifications contained in your letter of july 31, 1953, accepting the proposal to lease the entire interest owned by the Paalzow estate, or interests, in the land and buildings on the North West corner of Broad and 8th Street, Chattanooga, Tennessee, on the terms set forth in the offer dated July 24, 1953.

"It is understood that you will not make any leases or other contracts concerning the property without the written consent of *ourselves, or our agents: C. V. Brown & Bros.*

"Will you kindly make available to C. V. Brown & Bros. all leases and other contracts relating to the property.

"We have notified our attorney to communicate with your attorney relative to the preparation of the lease.

Very truly yours,

/s/ Seymour A. Berger
Jerome Berger

P. S.

Upon *our* arrival in Chattanooga *we* will be pleased to discuss the postscript in your letter of 7/31/53."

██ It is insisted here, as it was below, that the words "or order" appearing in next to the last paragraph of the letter dated July 24, 1953, are words of negotiability and gave the Berger brothers the right to name Halina Berger or another as Lessee in the lease; and that the Chancellor erred in holding to the contrary. This paragraph reads, as follows:

"It is understood that if this proposition be accepted lease embodying these and usual provisions will be executed by the owners of the building and ourselves, *or order*, as tenants."

In a well reasoned opinion, the very able Chancellor made the following findings in which we concur:

"Preliminary to the foregoing correspondence the Berger brothers had approached defendants about leasing the property in question and committed their proposition to writing as per letter bearing date of July 24th, hereinabove set forth. These brothers represented themselves to be men of wealth and experienced in the management of office buildings. They invited defendants to make a full investigation of these representations and ascertain for themselves as to their truth. Whereupon, such an investigation was made with the result that defendants learned that each of these gentlemen was a millionaire in his own right and enjoyed a splendid reputation with regard to management of properties of substantial values.

"Thus, acting upon the proposal outlined in the letter of July 24th, defendants responded with letter bearing date of July 31st. Then followed the third and final piece of correspondence, the Berger brothers letter dated August 25th, hereinabove set forth.

"The lawyers of the parties, respectively, were called upon to draft a formal lease. A draft of such lease was submitted by the Hon. William Brown, attorney for Bergers, to the Hon. Clifford Curry whose firm of Curry and Harris was representing the defendants. Some suggested changes were made and again Mr. Brown prepared and submitted another draft to defendants' attorney for inspection. It was in this draft that the name of Halina Berger was first mentioned as Lessee. It was this substitution that provided what ultimately led to a complete breakdown of the negotiations and a refusal by defendants to execute a lease to Halina Berger. Thus, this suit resulted.

\* \* \* \* \* \*

"█ The real controversy, as viewed by the Court, revolves around a proper interpretation of the agreement. Did defendants agree to lease the property to some third party named by Berger brothers specifically, to Halina Berger? Complainants' insistence upon a right to name a third party Lessee is based upon the words 'or order' appearing in next to the last paragraph of letter dated July 24th. I am not sure that I know what the words 'or order' mean or could mean by any ordinary or legal definition given them, as used in the letter of July 24th. One thing seems certain, however, these words could not have the meaning which complainants seek to ascribe to them. Emphasis was supplied to the personal pronouns employed by complainants, Berger Brothers, throughout their correspondence. Over and over and over again, they proposed and bound themselves to do not minor or trivial acts relating to the performance of this very substantial lease-hold, but acts which were calculated to induce Lessors to lease this

large office building, which acts could only be performed by very substantial people. Acting upon these premises and agreements, Lessors agreed to lease. Thus, to say that the words 'or order' shall be construed to mean a substitution of a third party who was completely unknown to the Lessors and who is not and may never be in a position to carry out the terms of a lease which contemplates a maximum term in excess of a half century, is unrealistic both in fact and in law.

"Actually, this substitution of the Lessee is an afterthought. When complainants' own attorney proceeded to draft a formal lease in keeping with the parties' agreement, his first draft employed the term Lessees throughout, obviously intended for the signature of Berger brothers. It is more significant that on the very day Berger brothers made their proposition in writing by letter dated July 24th to Lessors, Berger brothers proceeded to negotiate a lease agreement as Lessees to the Pioneer Bank, as Sub-Lessee, for the first floor of this building for various considerations, not the least of which was an annual rental of $32,500.00 per year. See Exhibit '2' of deposition of Webb C. Brown, Agent for Berger brothers. It is also significant that the Berger brothers on this very day, July 24th, recognized the fact that they were leasing this property, and not some third party. For example, and there are several, they advised Pioneer Bank to carry certain insurance in substantial amounts insuring Berger brothers 'as original Lessees. * * *'

"Thus, a construction of the words 'or order' is purely academic and could not affect so obvious an intention of the parties as this record discloses. Therefore, the Court holds that complainants are not entitled to specific performance of the contract as they contend, the effect of

which would be tantamount to a release of Berger brothers of covenants and agreements contemplated in the contract.

\*　　\*　　\*　　\*　　\*　　\*

"The bill will be dismissed at the cost of complainants and a decree will be entered accordingly \* \* \*"

It further appears that the defendants were not invited by the complainants to make an investigation of Halina Berger's financial standing, her experience or lack of experience in the management of large office buildings, etc., as they had done in the case of themselves. Nor were the defendants informed of complainants' intention to substitute Halina Berger as Lessee before the prepared lease was submitted to defendants for their signatures. Nor would the complainants execute a written contract guaranteeing the performance by Halina Berger of all the conditions contained in the Lease, which the defendants agreed to sign if this was done. Nor was there any explanation as to why the complainants in their original offer dated July 24, 1953, specifically used as pronouns "we" 20 times, "our" 4 times, "us" 10 times, and "ourselves" 2 times (see emphasis) if they did not intend to sign or in some way be bound by the terms of the lease. Otherwise, why the deception?

The undisputed proof shows that the defendants relied completely upon the representations made by complainants as to their wealth, their financial ability to perform the terms of the Lease for a period of 30 years, etc., and under these circumstances the defendants should not be compelled to execute a Lease with a third party whose financial responsibility, business experience in managing large buildings, etc., were unknown, and one for whom

the complainants would not sign an agreement guaranteeing performance. Apparently the complainants, by endeavoring to substitute Halina Berger as Lessee, wanted to be in a position whereby they could obtain the full benefits of the Lease without incurring any of the future liabilities.

Here the intention of the parties must be ascertained not from the two words "or order" relied upon by the complainants, but from all the facts and circumstances including the letters in their entirety. When thus considered it necessarily follows that the defendants, in accepting the complainants' offer, relied upon their credit, integrity and pecuniary responsibility.

█ It seems to be the rule generally that rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relationship of personal credit and confidence. 4 Am. Jur., Sec. 8, p. 236, Sec. 10, p. 238; 6 C. J. S., Assignments, secs. 26, 75, pp. 1074, 1128; Paige v. Faure, 229 N. Y. 114, 127 N. E. 898, 10 A. L. R. 653; 39 A. L. R. 1192; Atlantic & N. C. R. Co. v. Atlantic & N. C. Co., 147 N. C. 368, 61 S. E. 185, 23 L. R. A. N. S., 223.

In Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U. S. 379, 8 S. Ct. 1308, 1309, 32 L. Ed. 246, a contract for the sale and delivery of lead ore by a mining company to persons conducting a smelter, the ore to be assayed after delivery, and the price to be ascertained and paid according to the result of the assay, no security being given for payment except the character and solvency of the parties to whom the ore was to be delivered, was held not assignable by the latter, the Court saying:

"At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.' Humble v. Hunter, 12 Q. B. 310, 317; Winchester v. Howard, 97 Mass. 303, 305; Boston Ice Co. v. Potter, 123 Mass. 28; King v. Batterson, 13 R. I. 117, 120; Lansden v. McCarthy, 45 Mo. 106. The rule upon this subject, as applicable to the case at bar, is well expressed in a recent English treaties: 'Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' Pol. Cont. (4th Ed.) 425."

In Crane Ice Cream Co. v. Terminal Freezing & Heating Co., 147 Md. 588, 128 A. 280, 284, 39 A. L. R. 1184, the Court said:

" ' "A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that

it shall not be assignable. But when rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised, and the obligations performed by him alone, the contract, including both his rights and his obligations, cannot be assigned without the consent of the other party to the original contract." ' "

Accordingly, we are of the opinion, as was the Chancellor, that complainants' bill has no merit, and the decree dismissing the bill will be affirmed at complainants' costs.

McAmis, P. J., (Eastern Section) and Hale, J., concur.