IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE



FILED

May 6, 1996

Cecil W. Crowson
Appellate Court Clerk

FOR PUBLICATION

CAN DO, INC. PENSION AND PROFIT )
SHARING PLAN AND SUCCESSOR )
PLANS, INDIVIDUALLY AND AS A )   Filed:  May 6, 1996
TRUSTEE FOR GEORGE W. )
HOLDER, JR., )
 )
          Plaintiff-Appellee, )   DAVIDSON CHANCERY
 )
Vs. )
 )
 )   HON. IRVIN KILCREASE,
MANIER, HEROD, HOLLABAUGH )        CHANCELLOR
& SMITH, a professional corporation, )
C. KINIAN COSNER, JR., and )
H. ROWAN LEATHERS, III, )
 )
          Defendants-Appellants. )   No. 01-S-01-9501-CH-00013

| For Appellants: | For Appellee: |
|---|---|
| Robert L. Trentham | Alfred H. Knight |
| Mark Tyler Seitz | WILLIS & KNIGHT |
| TRABUE, STURDIVANT & DEWITT | Nashville, Tennessee |
| Nashville, Tennessee | |

# O P I N I O N

COURT OF APPEALS REVERSED;
JUDGMENT OF TRIAL COURT
REINSTATED.                                ANDERSON,C.J.

This case presents a question of first impression in Tennessee: whether or not a legal malpractice claim is assignable. We have determined that sound public policy reasons militate against allowing assignment of legal malpractice actions. We, therefore, reverse the Court of Appeals and dismiss the complaint.

## BACKGROUND

This appeal arises from the trial court's grant of the defendant law firm's motion to dismiss the complaint for failure to state a claim. Accordingly, the facts as alleged in the complaint must be taken as true, and are as follows.

George W. Holder, Jr., employed the defendant law firm, Manier, Herod, Hollabaugh and Smith, to perform certain legal services for him. Later, Holder individually filed a voluntary bankruptcy petition. Holder owned all the stock in Can Do, Inc. and was the primary beneficiary of and served as trustee of the Can Do, Inc. Pension and Profit Sharing Plan.

The bankruptcy trustee, William L. Newport, transferred to the Can Do, Inc. Pension and Profit Sharing Plan certain assets, including an assignment of "any cause of action or right to payment the bankruptcy estate may have against the following . . . C. Kinian Cosner, Jr. and Manier, Herod, Hollabaugh and Smith."

Following the transfer, Can Do, Inc., filed this complaint asserting that the law firm's mismanagement of Holder's legal affairs resulted in his bankruptcy. The law firm moved to dismiss the complaint for failure to state a claim, upon the grounds that the "claim for legal malpractice, if any, belongs to George W. Holder and cannot, as a matter of law, be assigned."

The trial court dismissed the complaint, because "the assignment of a legal malpractice claim in Tennessee is void and invalid as against public policy because it constitutes champerty and maintenance and would frustrate, if not entirely endanger, the attorney -- client relationship."

The Court of Appeals reversed, concluding that a legal malpractice cause of action survives the death of the assignor and therefore is assignable, and adopted the minority view that assignment of such claims does not violate public policy.

We granted the defendants' application to consider this important question of first impression in this State. For the reasons articulated below, we have concluded that legal malpractice claims are not assignable.

## ASSIGNMENT

Because a legal malpractice claim is a chose in action, we begin our analysis by reviewing the assignability of choses in action. With few exceptions, at early common law, a chose in action, which is a right of proceeding in a court of law to procure payment of a sum of money or to recover a debt, was not assignable. Black's Law Dictionary, 241(6th ed. 1990); Moran v. Adkerson, 168 Tenn. 372, 79 S.W.2d 44 (1935). The rule of nonassignability was so strictly construed that it applied even though the original promise was made to the promisee and his assigns. Hutsell v. Citizens' Nat. Bank, 166 Tenn. 598, 64 S.W.2d 188 (1933).

One reason cited to support the rule of nonassignability was that personal rights are nontransferable. See Picadilly, Inc. v. Raikos, 582 N.E.2d 338 (Ind. 1991). However, the major purpose of the rule was to prevent champerty and

maintenance. In Tennessee, "champerty" has been defined as "a bargain with a plaintiff or defendant in a cause to divide the matter sued for, if they prevail, whereupon the champertor is to carry on the party's suit at his own expense;" whereas, "maintenance" has been defined as "an officious intermeddling in a suit which no way belongs to one by maintaining or assisting either party, with money or otherwise, to prosecute or defeat it." Spicer v. Jarrett, 61 Tenn. 454, 457 (1873) (citations omitted).

The rule of nonassignability began to gradually erode over time as the public need to expand the quantity of transferable property in commerce increased. Under modern statutes and decisions, the assignability of a chose in action is now the general rule, and nonassignability the exception. 6A C.J.S., Assignments §§ 6 and 7 (1975). For example, in Tennessee, any contract-based chose in action, except those involving matters purely personal in nature, is assignable. See Tenn. Code Ann. § 47-50-102 (1995); Berger v. Paalzow, 40 Tenn. App. 153, 289 S.W.2d 861 (1956). Tort actions involving injuries to property are also assignable, East Tenn G. & V.R.R. v. Henderson, 69 Tenn. 1 (1878); Tenn. Code Ann. § 20-5-120 (1994), while tort actions involving personal injuries and wrongs done to the person, reputation, or feelings of the injured party continue to be unassignable. See Annotation, Assignability of Claim for Personal Injury or Death, 40 A.L.R.2d 500 (1975); 6A C.J.S. § 7, Assignments (1975).

In the absence of a statute, courts determining whether a chose in action is assignable generally apply the traditional common law test - whether the action would survive the death of the assignor and pass to the personal representative. See e.g., Haymes v Halliday, 151 Tenn. 115, 268 S.W. 130 (1925). For example, in this case, the Court of Appeals applied that traditional survivability

test and determined that legal malpractice actions survive the death of the assignor and are assignable.

Although a chose in action must survive to be assignable, not every action that survives is assignable. For example, claims for personal injuries survive, pursuant to Tenn. Code Ann. § 20-5-102 (1994), but generally are not assignable.

In modern times, the common law test of determining the issue of assignability solely by whether the claim survives the assignor's death seems outdated and misplaced. Other state courts have experienced difficulty in applying the survival test and have approached this issue by considering factors such as public policy considerations, which vary depending upon the particular type of action under examination. Joos v. Drillock, 338 N.W.2d 736, 738 (Mich. App. 1983).

Public policy is, in fact, the primary consideration upon which courts from other jurisdictions have focused in determining the assignability of a legal malpractice action. For example, the Indiana Supreme Court stated:

> Today, it seems anachronistic to resolve the issue of the assignability of a legal malpractice claim by deciding whether such a claim would survive the client's death. . . . As is sometimes the case with the common law, the rule has outlived the reason for its creation. The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of the centuries the custom, belief or necessity disappears, but the rule remains. Where such is the case, this Court has been willing to reexamine the basis of the rule.
>
> Assignment should be permitted or prohibited based on the effect it will likely have on modern society, and the legal system in particular.

Picadilly, Inc. v. Raikos, 582 N.E.2d at 341 (internal citations and quotations omitted).

We agree with the Indiana Supreme Court that in resolving the question of assignability of legal malpractice actions, public policy considerations, rather than the traditional survivability test, should guide the analysis. Indeed, it is particularly appropriate for this Court to examine the public policy considerations that bear upon this question as we have exclusive original jurisdiction over matters relating to the practice of law. Petition of Burson, 909 S.W.2d 768 (Tenn. 1995). Likewise, we conclude that resolution of the question should not turn on whether a claim for legal malpractice is classified as a breach of contract claim or a personal injury claim. Wagener v. McDonald, 509 N.W.2d 188, 190 (Minn. App. 1993). Rather than straining to fit the claim into a category, we think the better approach is to resolve the question on public policy grounds.

Employing that analysis, a majority of jurisdictions have concluded that public policy considerations militate against allowing assignment of legal malpractice actions. Francis M. Dougherty, Annotation, Assignability of Claim for Legal Malpractice, 40 A.L.R.4th 684 (1985 & Supp. 1995); Picadilly, Inc. v. Raikos, supra; Bank IV Wichita, Nat'l Ass'n v. Am, Mullins, Unruh, Kuhn & Wilson, 827 P.2d 758 (Kan. 1992); Earth Science Laboratories, Inc. v. Adkins & Wondra, P.C., 523 N.W.2d 254 (Neb. 1994); Chaffee v. Smith, 645 P.2d 966 (Nev. 1982); Schroeder v. Hudgins, 690 P.2d 114 (Ariz. App. 1984); Goodley v. Wank & Wank, Inc, 133 Cal. Rptr. 83 (Cal. App. 1976); Roberts v. Holland & Hart, 857 P.2d 492 ( Colo. App. 1993); Washington v. Fireman's Fund Ins. Co., 459 So.2d 1148 (Fla. App. 1984); Christison v. Jones, 405 N.E.2d 8 (Ill. App. 1980); Coffey v. Jefferson County Bd. of Educ., 756 S.W.2d 155 (Ky. App.

1988); Joos v. Drillock, supra; Wagener v. McDonald, supra; City of Garland v. Booth, 895 S.W.2d 766 (Tex. App. 1995); Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves, 709 F. Supp. 44 (D. Conn. 1989), aff'd 929 F.2d 103 (2nd Cir. 1999); Scarlett v. Barnes, 121 B.R. 578 (W.D. Mo. 1990); contra Thurston v. Continental Cas. Co., 567 A.2d 922 (Me. 1989); Collins v. Fitzwater, 560 P.2d 1074 (Or. 1977), overruled on other grounds  Lancaster v. Royal Ins. Co., 726 P.2d 371 (Or. 1986); Hedlund Mfg. Co., Inc. v. Weiser, Stapler & Spivak, 539 A.2d 357 (Pa. 1988); American Hemisphere Marine Agencies, Inc. v. Kreis, 244 N.Y.S.2d 602 (N.Y. Sup. 1963).

The many public policy reasons underlying these courts' rejection of assignability of legal malpractice claims was perhaps best summarized by the California appellate court in Goodley, which was the first to flatly confront the issue.  There, the court focused on the unique character of legal services, the personal nature of the attorney's duty to the client, and the confidentiality of the attorney-client relationship.

> The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights.  The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession.  The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers.  The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

Id, 133 Cal. Rptr. at 87.

We generally agree with the Goodley court and conclude that assignment of legal malpractice actions would both endanger the attorney-client relationship and commercialize legal malpractice lawsuits. We are particularly concerned that the relationship between an attorney and client remain a fiduciary relationship of the very highest character. As a result of that relationship, the attorney owes the client not only the duty to use skill, prudence and diligence in the rendition of services, but also the duty to act loyally towards the client and to maintain client confidences. Tenn. Sup. Ct. R. 8, Canons 4 and 5. These rules and their enforcement by this Court protect the public, and a violation may result in disciplinary action, as well as a legal malpractice claim. See also Wagener v. McDonald, 509 N.W.2d at 191. Allowing free assignment would be a disservice to the public by compromising both the attorney's duty of loyalty and the duty of confidentiality, resulting in a weakened attorney-client relationship.

As the Indiana Supreme Court recognized, "[a]n adversary might well make a favorable settlement offer to a judgment-proof or financially strapped client in exchange for the assignment of that client's right to bring a malpractice claim against his attorney. Lawyers involved in such negotiations would quickly realize that the interests of their clients were incompatible with their own self-interest." Picadilly, Inc. v. Raikos, 582 N.E.2d at 343; City of Garland v. Booth, 895 S.W.2d at 770. The risk that allowing assignments of claims would impair an attorney's loyalty would be present therefore, not only in those cases in which a client assigned a malpractice claim, but in all other cases as well.

Moreover, assignment would compromise the duty of confidentiality.

Whenever an attorney is sued by a client for legal malpractice, the attorney is permitted to reveal confidential client information reasonably necessary to establish a defense. Tenn. Sup. Ct. R. 8, DR 4-101(C)(4). So long as the client brings the malpractice claim, the client has the power to drop the lawsuit to avoid the disclosure of embarrassing confidential communications. Id. Once a legal malpractice claim is assigned, however, the client loses control of the litigation. The assignee controls the claim and may have little or no concern for the client's sensitivities. The client could thereby be harmed and such disclosures would foster disrespect for the attorney-client relationship in general. Picadilly, Inc. v. Raikos, 582 N.E.2d at 343-44; Wagener v. McDonald, 509 N.W.2d at 192.

Finally, in our view, the commercialization of legal malpractice claims that would be fostered by allowing assignment is inimical to the legal profession and the administration of justice. "Unlike any other commercial transaction, the client-lawyer relationship is structured to function within an adversarial legal system. In order to operate within this system, the relationship must do more than bind together a client and a lawyer. It must also work to repel attacks from legal adversaries. Those who are not privy to the relationship are often purposefully excluded because they are pursuing interests adverse to the client's interests." Picadilly, Inc. v. Raikos, 582 N.E.2d at 343-44. Assignment would undermine the fundamental structure and function of the relationship and create a risk of collusion that must not be countenanced. City of Garland v. Booth, 895 S.W.2d at 770; Wagener v. McDonald, 509 N.W.2d at 191. Accordingly, we conclude that considerations of public policy prohibit the assignment of legal malpractice claims in Tennessee.

## CONCLUSION

-9-

Because we have determined that the public policy of this State should prohibit the assignment of legal malpractice actions, the judgment of the Court of Appeals is reversed, and the judgment of the trial court dismissing this action is reinstated. Costs of this appeal are taxed to the plaintiff-appellee, Can Do, Inc., for which execution may issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Reid, Birch, and White, JJ.