**Steven G. CLARK, d/b/a BP Emerald Mart, Plaintiff,**

v.

**BP OIL COMPANY, BP Does 1–50, c/o BP Oil Company, and Downey Oil Company, Defendants.**

No. 3:94–cv–0763.

United States District Court, E.D. Tennessee.

May 17, 1996.

William W. Petty, O'Connor, Petty, Child & Boswell, Knoxville, TN, and Dimitri G. Daskal, Annapolis, MD, for Plaintiff.

Howard H. Vogel, O'Neil, Parker & Williamson, Knoxville, TN, Alphonse M. Alfano, Washington, DC, and Duncan V. Crawford, Crawford, Crawford & Newton, Maryville, TN, for Defendants.

### ORDER

JORDAN, District Judge.

For the reasons stated in the court's memorandum opinion filed with this order, the court finds the defendants' motions to dismiss or for summary judgment [docs. 18 and 20] well taken in part, and they are **GRANTED IN PART**. It is **ORDERED** that the plaintiff's claims against the defendants in this civil action are **DISMISSED,** except his claims on the theories that one or more of the defendants are liable for breach of contract for inadequate performance of the dealer lease and supply agreement in issue; that the defendants BP Oil Company and BP Does 1–50 granted orally to the plaintiff a right to purchase the marketing premises in issue or a right of first refusal to purchase these premises, and that all defendants made misrepresentations to the plaintiff to deprive him of this right; that the defendants committed breach of contract and/or fraud for anticompetitive purposes against the public policy of the State of Tennessee; and that the defendants violated Tennessee Code Annotated § 47–25–611(b), part of the Tennessee Petroleum Trade Practices Act, as amended.

It is further **ORDERED** that this civil action is **REMANDED** to the Blount County, Tennessee, Circuit Court for further proceedings on these remaining claims in this civil action.

### MEMORANDUM OPINION

This civil action is before the court for consideration of the defendants' motions to dismiss or for summary judgment [docs. 18 and 20]. The court has considered the briefs filed in support of these motions [docs. 19, 21, 33 and 37], as well as the briefs and affidavits submitted by the plaintiff [docs. 30, 31, 32 and 36]. The court heard the arguments of counsel, with the agreement of counsel, on Monday, April 29, 1996.

The plaintiff's claims arise mainly under Title I of the Petroleum Marketing Practices Act, as amended, 15 U.S.C. §§ 2801–2806 (PMPA). For this reason, the defendants properly removed this civil action from the Blount County, Tennessee, Circuit Court to this court. 28 U.S.C. §§ 1441(a), 1331.

The plaintiff Mr. Clark, to use the terms defined in the PMPA, is a franchisee retailer of motor fuel who is authorized to use the

defendant BP Oil Company's trademark and service mark in connection with the sale of motor fuel to the motoring public. He operates a service station at the intersection of Interstate 75 and State Route 95 at Lenoir City, Tennessee, pursuant to a dealer lease and supply agreement with the defendant BP Oil Company (BP)[1].

This dealer lease and supply agreement, a copy of which the defendant BP exhibited to its brief in support of its motion to dismiss or for summary judgment, has an effective date of January 1, 1992, and a term which ends on December 31, 1994, and is expressly subject to the PMPA with respect to issues of termination and nonrenewal. The agreement provides for the lease of the service station premises by BP to Mr. Clark, the sale by BP to the plaintiff for resale of BP branded motor fuel, motor oils, petroleum and other products, the licensing to Mr. Clark of BP's trademark and service mark, and other, related matters. The agreement prohibits "Dealer" (*i.e.*, the plaintiff) from assigning, mortgaging, encumbering or otherwise transferring the agreement, and grants to BP a right of first refusal and option to acquire the plaintiff's interest under the agreement on the same terms and conditions offered by an outside party. The agreement is silent with respect to assignment by BP.

The dealer lease and supply agreement is stated to constitute "the entire agreement and understanding between BP and Dealer, merging and superseding all prior agreements, understandings, warranties and representations, whether oral, written, express or implied between BP and Dealer. All prior agreements between BP and Dealer relating to the use and occupancy of the Facility and any franchise relationship between BP and Dealer are hereby terminated...."[2] In the agreement, "Dealer expressly acknowledges and agrees that no agent or employee of BP

below the level of a District Manager may waive, alter or modify any of the provisions of this Agreement or in any way bind BP to obligations not set forth in this Agreement."

This civil action arises out of BP's assignment of its interest under the agreement to the defendant Downey Oil Company (Downey), a distributor under the PMPA. In his complaint filed in the Blount County Circuit Court, the plaintiff Mr. Clark alleges that BP, by conveying its interests under the agreement and in the service station premises to Downey, deprived the plaintiff of a right of first refusal to purchase the service station guaranteed by the PMPA. The plaintiff says that Downey, as a small distributor, cannot perform the services promised by BP; a refiner and franchisor which operates internationally, in the dealer lease and supply agreement. Mr. Clark says that Downey, which also supplies motor fuel to retailers owned or controlled by it and in competition with the plaintiff, does not sell motor fuel and related products to the plaintiff at prices as low as those which BP might offer, and that the effect of the assignment from BP to Downey was to terminate or to fail to renew Mr. Clark's franchise in violation of the PMPA, with a resulting loss of the value of the goodwill of Mr. Clark's business.

In his complaint, Mr. Clark states multiple theories on the basis of which, he says, he is entitled to relief against the defendants BP and Downey. He says that BP misrepresented to him that he had a right of first refusal to purchase his service station, misrepresented its intention to sell the station, and misrepresented its valuation of the station, inducing the plaintiff to believe that he could not afford to buy it. The plaintiff says that in making these misrepresentations and proceeding with its assignment of its interests to Downey, BP violated Mr. Clark's right of first refusal guaranteed by the PMPA.[3]

---

1. The defendants BP Does 1–50 are unidentified employees or agents of the defendant BP. The plaintiff's allegations against these unidentified defendants are essentially the same as his allegations against BP. Therefore, any reference to BP in this memorandum opinion should be read to include both this corporate defendant and BP Does 1–50.

2. "[F]ranchise relationship" is a term defined in the PMPA. 15 U.S.C. § 2801(2). *See also* 15 U.S.C. § 2802, entitled "Franchise relationship."

3. In 15 U.S.C. § 2802(b)(2)(E)(iii)(I), a right of first refusal to purchase the franchisor's interest in leased marketing premises is mandated in a case in which a franchise is terminated or not renewed because the franchisor makes "a determination ... in good faith and in the normal

The plaintiff says also that in acting as alleged, BP effectively failed to renew the plaintiff's franchise in violation of the PMPA. The plaintiff says that the defendant franchisor's alleged conduct also violated the PMPA in that it was an anticipatory nonrenewal of the franchise. Mr. Clark pleads as theories of recovery also that BP failed to give notice of termination or of nonrenewal of the franchise in accordance with the requirements of the PMPA, and that the assignment constituted a constructive termination of the franchise, in that the assignee, Downey, has altered the terms of the plaintiff's purchases of motor fuels under the dealer lease and supply agreement, and in that Downey does not provide the support services required of the franchisor by the agreement.[4]

Mr. Clark states further in his complaint that BP's assignment of its interests to Downey violated the PMPA by violating Tennessee law, in that the assignment breached the plaintiff's and BP's lease agreement, increased the plaintiff's burdens, and placed the plaintiff at increased risk.[5] The plaintiff states a cause of action for civil conspiracy against both defendants, alleging that they purposefully misrepresented the purchase price of the marketing premises (*i.e.,* the

service station) operated by the plaintiff. The plaintiff alleges against the defendant Downey alone tortious interference with the plaintiff's contractual relationship with BP.

The plaintiff states in his complaint that the franchise relationship imposed fiduciary duties on the defendant BP, and that this defendant breached those duties by conduct which breached these parties' contract, which was fraudulent, which was performed for anticompetitive purposes, and which violated the public policy of the State of Tennessee. Mr. Clark alleges that both BP and Downey committed fraudulent misrepresentations to his detriment. He alleges also that both defendants, in their conduct alleged, violated the Tennessee Petroleum Trade Practices Act, in that BP, a vertically integrated producer, is using its franchise relationship with its distributor, Downey, to sell motor fuel at retail for less than the prices charged to the plaintiff, and in that Downey has engaged in sustained sales at below cost for the purpose of injuring its competitors. The plaintiff states causes of action against BP for breach of contract and breach of the duty of good faith and fair dealing.

In moving to dismiss or for summary judgment, the defendant BP does not dispute the

course of business to withdraw from the marketing of motor fuel through retail outlets in the relevant geographic market area in which the marketing premises are located." *See also* § 2802(b)(3)(D)(iii)(II), which mandates such a right of first refusal if the franchisor makes a determination in good faith and in the normal course of business to sell the leased marketing premises.

As will be seen *infra*, BP in this civil action contends that there has been no termination or nonrenewal of the plaintiff's franchise, and therefore does not rely on the market withdrawal provision of the statute.

**4.** The PMPA, in 15 U.S.C. § 2802(b)(2)(E)(iii)(II), provides that when a franchisor withdraws from a market in accordance with the provisions of the statute, and sells, transfers, or assigns to another person its interest in leased marketing premises, in connection with the sale, transfer, or assignment of its interests in one or more other marketing premises, the assignee must offer "in good faith, a franchise to the franchisee on terms and conditions which are not discriminatory to the franchisee as compared to franchises then currently being offered by [the assignee] or franchises then in effect and with respect to which [the assignee] is the franchisor."

As the court has noted in note 3 *supra,* BP disclaims any reliance on the market withdrawal provisions of the PMPA in this litigation. *See also infra.*

**5.** The PMPA contemplates assignments of covered franchises, inasmuch as "franchise" is defined to include "the unexpired portion of any franchise, as defined by the preceding provisions of this paragraph, which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise." 15 U.S.C. § 2801(1)(B)(iii).

In 15 U.S.C. § 2806(b)(1), the PMPA provides, "Nothing in this [title] authorizes any transfer or assignment of any franchise or prohibits any transfer or assignment of any franchise as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise." The plaintiff provides no authority to support his argument that the existence of this provision in the PMPA, in the same statutory section as the preemption provision, establishes that an assignment constitutes a termination or nonrenewal under the PMPA.

facts alleged by the plaintiff, as opposed to the plaintiff's characterizations of the facts or legal conclusions drawn from them. Because this defendant, in support of its motion, submitted a copy of the pertinent dealer lease and supply agreement, the genuineness of which is not in dispute, the court will consider its motion as one for summary judgment under Fed.R.Civ.P. 56, but will take the simple facts alleged by Mr. Clark as true.[6]

It is plain that all of the plaintiff's claims which arise under the PMPA are governed by the act. Whether the plaintiff's claims which arise under Tennessee law are preempted by the PMPA must be answered by reference to 15 U.S.C. § 2806(a)(1), which provides,

> To the extent that any provision of this [title] applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this [title].

The United States Court of Appeals for the Sixth Circuit has construed this preemption provision in the context of State-law claims for misrepresentation and fraud. In *Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907 (6th Cir.1986), the plaintiff distributor contended that during a period when one of its franchise agreements with the defendant Texaco was in effect, the plaintiff learned of a rumor that Texaco planned to withdraw from marketing petroleum products in Michigan, the distributor's geographic market area. During a meeting between executives of the parties, Texaco denied this. However, according to the plaintiff, at the time of this denial, the Texaco executive had already received a report concluding that withdrawal from the Detroit marketing area was a viable option, and after the meeting, Texaco announced publicly its intention to withdraw from Michigan. The plaintiff distributor contended that as a result of its reliance on Texaco's misrepresentation at the meeting between executives, the plaintiff lost opportunities to enter into other distributorship arrangements.

The court of appeals agreed with the trial court that the plaintiff's PMPA claim was time-barred if the facts showed that the parties had entered into a valid interim franchise after the expiration of their last franchise agreement. The plaintiff sought also to recover under State law on the ground of the Texaco executive's alleged misrepresentation concerning Texaco's intent to withdraw from the plaintiff distributor's market. The trial court noted that the effect of allowing the plaintiff to recover on this claim would be to impose on Texaco a greater notice-of-termination-or-nonrenewal burden than that imposed by the PMPA, since, to avoid liability, Texaco would have had to notify the plaintiff of Texaco's intentions concerning the plaintiff's geographic market area when the plaintiff asked the question, much more than 180 days[7] before the expiration of the parties' franchise agreement.

The court of appeals agreed, construing what is now 15 U.S.C. § 2806(a)(1) to "preempt any state law with respect to 'grounds for, procedures for, and notification requirements' with respect to terminations and nonrenewals," as well as "any state law providing remedies or penalties for any violations of the notice provisions of the [PMPA]." *Consumers Petroleum Co. v. Texaco, Inc., supra,* 804 F.2d at 915 (citation omitted). The court of appeals noted Congress' intent

---

**6.** In considering these defendants' motions, the court works according to standards developed in a familiar line of cases. *See, e.g., Street v. J.C. Bradford & Company,* 886 F.2d 1472 (6th Cir. 1989), and authorities cited therein.

**7.** *See* 15 U.S.C. § 2804(b)(2)(A).

in enacting the PMPA to provide a nationally uniform set of rules governing these matters.

■ In the case at bar, if the court accepts the plaintiff Mr. Clark's theory that the conduct of the defendants alleged by him amounted to a constructive termination or nonrenewal of his franchise, then BP had an obligation to give the plaintiff notice of the termination or nonrenewal at the time and in the manner required by the PMPA, with the other obligations imposed by the statute in certain cases of termination or nonrenewal which are described in the footnotes *supra*. Under the express preemption provision of the PMPA, State law, either statutory or common law, cannot alter or increase this obligation.

If the plaintiff's theory of a constructive termination or nonrenewal is unavailing under the PMPA, then granting the plaintiff Mr. Clark relief under State law for a failure to notify or to grant a right of first refusal to purchase his service station would likewise run afoul of the preemption provision of the PMPA, because this would have the effect either of altering the act's definition of nonrenewal or termination, or of increasing BP's burdens with respect to the grounds for, procedures for, or notification requirements with respect to terminations and nonrenewals. The PMPA was drawn carefully to distinguish between an assignment of a franchise operated on leased premises when the franchisor is withdrawing from the franchisee's geographic market area and such an assignment when the franchisor is not so withdrawing. Granting the plaintiff a remedy under Tennessee law in the form of a right of first refusal even if this is a case of an assignment in the latter category would impair the uniformity which Congress sought to achieve by enacting the PMPA.

If BP did not violate any of the plaintiff's rights under PMPA, then the court cannot find that this defendant and the defendant Downey conspired to deprive the plaintiff of any such right. If the court concludes that BP did violate one or more rights granted to Mr. Clark by the PMPA, then the plaintiff's remedies, if any, must be derived from the PMPA, and cannot be modified or increased by reference to any State-law civil conspiracy theory.

■ The plaintiff's claim for breach of a fiduciary duty is preempted, because imposing such a duty on BP on the basis of the facts alleged by Mr. Clark would add to the franchisor's nonrenewal, termination and notice duties imposed by the PMPA. *McGee v. Gulf Oil Corp.*, 2 Bus.Franchise Guide (CCH) para. 8379 at 15,348 (N.D.Ala.1985). In any event, "[a] petroleum franchise is not generally a 'special relationship.' " *Simmons v. Mobil Oil Corporation*, 29 F.3d 505, 512 (9th Cir.1994) (citation omitted).

The PMPA also preempts Mr. Clark's claim for breach of the duties of good faith and fair dealing. If BP constructively terminated this franchise in violation of the PMPA, its good faith is irrelevant. If the defendant refiner did not violate the PMPA, State-law concepts of good faith and fair dealing cannot be used to increase its PMPA duties with respect to termination, nonrenewal and notice. *Compare Simmons, supra*, 29 F.3d at 512 (citation omitted):

> Simmons could have alleged that the rental increases were changes to the provisions of the franchise that were not made in good faith and in the normal course of business. 15 U.S.C. § 2802(b)(3)(A). Having failed to properly bring an action under the PMPA, Simmons cannot recharacterize his claim as a state law claim for breach of the covenant of good faith. State law imposes a different standard of behavior, and therefore state law claims are preempted by 15 U.S.C. § 2806.

The plaintiff Mr. Clark's breach-of-contract claim is preempted to the extent that it arises out of the alleged termination or nonrenewal of his franchise; the dealer lease and supply agreement in issue expressly incorporates the provisions of the PMPA concerning this subject.

For these reasons, the court concludes that the plaintiff Mr. Clark's claims under Tennessee law, to the extent that they relate to the alleged termination or nonrenewal of his franchise arising out of BP's assignment to Downey, are preempted by 15 U.S.C. § 2806(a)(1). The court will address below the plaintiff's theories that BP breached a

separate, contractual undertaking to grant Mr. Clark a right of first refusal, that Downey tortiously interfered with Mr. Clark's and BP's contractual relationship in violation of Tennessee law, that the defendants breached contractual obligations and/or committed fraud for anticompetitive purposes against the public policy of Tennessee, that the defendants misrepresented to the plaintiff the purchase price of his service station and the terms under which Downey would operate as BP's assignee, and that the defendants violated the Tennessee Petroleum Trade Practices Act. The court must also address below Mr. Clark's contention that BP's assignment to Downey violated the plaintiff's rights under the PMPA because it was an invalid assignment under Tennessee law; in the case of this theory, while it arises under the PMPA, the court must necessarily look to State law for substantive guidance.[8]

The plaintiff's first through ninth causes of action, to the extent that they state claims under the PMPA, rise or fall according to whether the court finds that BP terminated its franchise with the plaintiff, or finds that BP failed to renew its franchise relationship with the plaintiff. If there has been, as a matter of law, no termination or nonrenewal in this case, the plaintiff has no right to invoke any provision of the PMPA dependent on a finding of termination or nonrenewal, such as the statutory grant of a right of first refusal to purchase the marketing premises, and has no right to any remedy provided by the PMPA. It is the plaintiff Mr. Clark's burden to prove termination or nonrenewal. 15 U.S.C. § 2805(c).

Both the plaintiff and the defendants have cited to the court *May–Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917 (6th Cir. 1989). In *May–Som Gulf*, the plaintiffs were independent franchisees who were Ohio Gulf service station retailers, and the defendant had become their franchisor through its acquisition of Gulf Oil Corporation. The defendant sold its Ohio Gulf marketing operations, including the service stations leased to the plaintiff dealers, to a third party. This sale was structured so as to require the purchaser to assume the defendant's obligations un-

der its franchise agreements with the Ohio Gulf dealers, including renewal obligations and obligations concerning the Gulf trademark and the acceptance of Gulf credit cards. The plaintiffs sued, alleging constructive termination of their franchises, and pleading also State-law claims for breach of contract and tortious interference with contract.

On motions for summary judgment filed by the defendant and the purchaser of its Ohio Gulf marketing operations, the district court held that the assignment from the defendant to the purchaser was valid under Ohio law and did not constructively terminate the plaintiffs' franchises, and that in any event, the defendant franchisor had complied with the market withdrawal provisions of the PMPA. The district court held also that the claims for breach of contract and for tortious interference with contract were preempted by the PMPA.

The court of appeals in *May–Som Gulf* agreed. The court of appeals stated that a liberal construction of the PMPA is called for to give effect to Congress' intent to shield independent service station dealers against coercion and arbitrary and discriminatory franchise terminations by large oil companies, but that to the extent that the PMPA effects a diminution of the property rights of franchisors, it "should not be interpreted to reach beyond its original language and purpose." *Id.* at 921 (citation omitted). The court of appeals stated also that the balance between competing interests struck in the PMPA should not be read to preclude franchisors from exercising their right to seek efficiency through corporate reorganizations, mergers and acquisitions. *Id.*

The court of appeals in *May–Som Gulf* explained that a franchise between a refiner which owns a service station and a retailer under the PMPA consists of three major elements, a contract to use the refiner's trademark, a contract for the supply of motor fuel to be sold under the trademark, and a lease of the marketing premises. The court then stated its holding "that to sustain a claim, under the PMPA, that a franchisor assigned and thereby constructively termi-

**8.** *See* 15 U.S.C. § 2806(b)(1), quoted in note 5 *supra.*

nated a franchise agreement, the franchisee must prove either: (1) that by making the assignment, the franchisor breached one of [these] three statutory components of the franchise agreement ...; or (2) that the franchisor made the assignment in violation of state law and thus, the PMPA was invoked." *Id.* at 922 (citations omitted).

After concluding that there was no evidence in the case before it of a breach of any of the three elements of a franchise under the PMPA, the *May–Som Gulf* court stated that in the case before it, "The district court correctly concluded that if the assignment is valid under Ohio law, it is neither a termination nor a nonrenewal, in violation of the PMPA." *Id.* at 923 (citations omitted).[9] Reviewing the assignment under Ohio law, the court agreed that it was not prohibited or invalid, and held specifically that the plaintiffs' allegations of price increases resulting from the assignment did not establish a material increase of their burdens so as to render the assignment invalid, when all of their franchises had open price terms. *Id.* at 924. The court discounted speculative allegations that the defendant franchisor's assignee would be unable to supply motor fuel to the plaintiffs, and agreed that the plaintiffs had failed to produce evidence of substantial and ongoing difficulties experienced by the assignee in the performance of its franchise obligations. *Id.* at 925.

Contrary to the plaintiff Mr. Clark's argument in the case at bar, the holding in *May–Som Gulf* does not depend on the fact that the defendant franchisor had withdrawn from the relevant geographic market. The court of appeals' holding is stated alternatively, that the assignment of the plaintiffs' franchises was not constructive termination or nonrenewal of the franchises, but that even if it were, the defendant franchisor complied with the market withdrawal and notice provisions of the PMPA. *See id.* at 925.[10] Be-

cause, as this court has stated above, BP does not rely on the market withdrawal provision of the PMPA in this case, *May–Som Gulf* is authoritative here, and requires that BP's motion for summary judgment be granted, unless the plaintiff Mr. Clark has shown the existence of a genuine issue of material fact concerning either a breach of one of the three essential elements of his franchise under the PMPA as a result of the BP–to–Downey assignment, or the asserted invalidity of the assignment under Tennessee law.

■ The plaintiff's argument may be summarized in part by a quotation from his initial brief in response to the defendants' motions: "In a nutshell, renewal by and with Downey Oil is not renewal with BP. Thus, this transaction is not an 'assignment' it is an offer of novation, or more accurately a forced novation that acts as a non-renewal of the franchise relationship between Clark and BP." [Doc. 30 at 9.] It is clearly the law in this circuit, based on *May–Som Gulf, supra,* that assignment of a franchise by a refiner to a distributor does not, standing alone, constitute termination or nonrenewal under the PMPA. No genuine issue has been shown concerning the facts that since the BP–to–Downey assignment, the plaintiff has continued to occupy the marketing premises, has continued to be supplied with BP-branded motor fuel for resale, and has continued to be licensed to use BP's trademark and service mark in his business. The court must therefore inquire whether any aspect of the assignment renders it invalid under Tennessee law, in which case it did violate the PMPA.

Tennessee Code Annotated § 47–50–102 provides, "Bonds with collateral conditions, bills or notes for specific articles or the performance of any duty, nonnegotiable notes for money and accepted orders shall be assignable, and suit may be prosecuted by the assignee in the assignee's own name." This

---

9.  *See also McGee v. Gulf Oil Corp.,* 2 Bus.Franchise Guide (CCH) para. 8379 at 15,348 (N.D.Ala.1985), cited by BP in its brief in support of its motion for summary judgment: "The PMPA thus leaves the question of assignability to state law, clearly implying that an assignment or transfer of a franchise, by itself, does not constitute a termination."

10.  The fact that the court of appeals in *May–Som Gulf* stated its holding alternatively in this manner also refutes the plaintiff Mr. Clark's argument that the PMPA contemplates assignment by a franchisor only in the context of a market withdrawal.

has been interpreted to provide that contracts generally are assignable. *Oak Grove Const. Co. v. Jefferson County,* 219 F. 858, 862 (6th Cir.), *cert. denied,* 238 U.S. 627, 35 S.Ct. 664, 59 L.Ed. 1495 (1915). In *Oak Grove Const. Co.,* the federal circuit court of appeals stated that it found nothing to indicate that the Tennessee rule is different from the general rule "that a contract is assignable unless its execution involves personal trust or confidence." *Id.* (citation omitted).

A contract is not assignable if the contract involves reliance by the obligor on the assignor's personal skill, trust or confidence. *Edgewood Lumber Co. v. Hull,* 32 Tenn.App. 577, 589, 223 S.W.2d 210, 215, *cert, denied, id.* (Tenn.1949). "It seems to be the rule generally that rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relationship of personal credit and confidence." *Berger v. Paalzow,* 40 Tenn.App. 153, 167, 289 S.W.2d 861, 867, *cert. denied, id.* (Tenn.1956) (citations omitted).

Concerning transactions in goods specifically, T.C.A. § 47–2–210(2) provides in part,

Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance.

In *Petry v. Cosmopolitan Spa International, Inc.,* 641 S.W.2d 202, 203 (Tenn.Ct.App.), *perm. app. denied, id.* (Tenn.1982), the Tennessee Court of Appeals, citing similar language in RESTATEMENT (SECOND) OF CONTRACTS § 317(2) (1981), stated that contractual rights may generally be assigned, unless the assignment would materially change the duty of the obligor, materially increase the burden or risk imposed on the obligor by the contract, materially impair the obligor's chance of obtaining return performance, materially reduce the value of the contract to the obligor, or the assignment is forbidden by statute or public policy, or is validly precluded by the contract itself.

The plaintiff has not submitted any evidence which tends to show that the dealer lease and supply agreement in issue falls under any of these exceptions to the general rule of assignability. The references in the "whereas" clauses of the dealer lease and supply agreement to BP's reputation as a refiner and marketer and to the dealer's desire to lease marketing premises owned or leased by BP are not sufficient to show that these parties made their agreement on the basis of skill, trust or credit unique to BP. While it is safe to assume that BP is a corporation of considerably more wealth than Downey, there is no evidence to show that any financial difference between the refiner and the distributor in itself affects the performance of the franchisor's obligations under the dealer lease and supply agreement. This distinguishes this case from *Berger v. Paalzow, supra,* in which the assignee proposed as a substitute tenant of commercial real property did not have the credit or the business experience of the individuals with whom the landlord had negotiated.

The three essential obligations of the agreement, the lease, the supply of motor fuel for resale, and the use of BP's trademark and service mark, may be met by an assignee as well as by BP; all of the evidence submitted to the court shows that they are being met by Downey. The plaintiff argues that if Downey loses its license to use BP's trademark and service mark, then Downey will be unable to fulfill BP's licensing obligation under the agreement, but this speculates about something which might never occur. The plaintiff Mr. Clark's allegations about the inadequacies of Downey's performance to date might support a cause of action for damages for breach of contract, but they do not show, even if taken as true, that the substitution of Downey for BP in itself has changed Mr. Clark's contractual duties, increased his risk or burden of performance under the agreement, or impaired the possibility of receiving performance in return for his performance.

Nor do Mr. Clark's allegations concerning the terms modified by Downey supply the necessary showing to invalidate this assignment, because these terms in the original dealer lease and supply agreement are open terms which could have been modified by BP

itself. The agreement does not set a rental amount for any period upon renewal after the initial three-year term, and provides for an "alternate rent arrangement" upon six months' written notice "provided that such an alternate arrangement is also then being placed in effect for all other BP dealers in the same type facility in the marketing area in which Dealer's Facility is located." "Because of the dynamic nature of the motor fuel retailing industry," the agreement grants to the franchisor broad authority to change the mode of the dealer's operation of the service station. Most importantly, the agreement provides, "Prices for all products purchased by Dealer from BP shall be BP's price in effect at the time and place of delivery for franchised dealers. Prices for all products shall be subject to change without notice to Dealer."

The agreement requires that it be read against the background of the PMPA, and the PMPA itself contemplates that upon renewal of a franchise relationship, the terms of the franchise agreement may differ from those of the agreement just expired:

> For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:
>
> (A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—
>
> (i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and
>
> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor or otherwise preventing the renewal of the franchise relationship.

15 U.S.C. § 2802(b)(3). The plaintiff could not have compelled BP, upon the expiration of the term of the dealer lease and supply agreement in issue, to enter into a franchise agreement on exactly the same terms as the expired one. Therefore, the fact that Downey and the plaintiff agreed by an addendum to renew the franchise relationship with some of the terms and conditions of the dealer lease and supply agreement modified does not show a change in duty, increase of risk or burden, or impairment of the possibility of return performance which would render the BP-to-Downey assignment invalid.[11]

Tennessee statutory law, in the Tennessee Petroleum Trade Practices Act, as amended, T.C.A. § 47-25-601 to 47-25-626, does not prohibit an assignment such as the one in issue here. The court must find, on the basis of the uncontroverted facts in the record before it, and on the basis of this review of applicable Tennessee law, that there is no genuine issue in this case concerning the validity of the BP-to-Downey assignment. The court must therefore conclude as a matter of law that there has been no termination or nonrenewal, constructive or otherwise, of the franchise or franchise relationship in this case.

The plaintiff Mr. Clark argues in opposition to BP's motion for summary judgment that even if the BP-to-Downey assignment has not ousted him from the marketing premises, deprived him of BP-branded motor fuel for resale, or deprived him of the right to use BP's marks, and even if the assignment did not violate Tennessee law (so as to be invalid under the PMPA), he is entitled to relief as a result of the assignment, because the effect of the assignment was to deprive him of rights guaranteed by the PMPA. According to the plaintiff, "if application of state assignment law would avert application of the substantive provisions of the PMPA, then state law allowing assignment *is preempted*, regardless of whether the assignment is legal under state law." [Doc. 32 at 29–30 (emphasis in original).]

Whatever the accuracy of this assertion as a general rule of law, the authorities on which Mr. Clark relies do not support his

---

11. In so finding, the court does not find, and does not mean to imply, that Mr. Clark waived any claim or theory by signing the addendum proposed by Downey and entering into the renewed franchise relationship.

argument in this case. In *Patel v. Sun Company, Inc.*, 63 F.3d 248 (3d Cir.1995), the issue presented was the appropriateness of injunctive relief in a case in which the franchisor had, several years before, entered into a sale and lease back of the marketing premises with a company not engaged in the petroleum business, and in which the plaintiffs' franchise was not renewed because of the imminent expiration of the franchisor's lease. *See* 15 U.S.C. §§ 2802(b)(3)(D)(i)(III) and 2805(e)(1)(A)(iii), and 2802(b)(2)(C) and (c)(4). The court of appeals in *Patel* indicated that the franchisee would have a cause of action for damages under the PMPA for nonrenewal in such a circumstance, for the franchisor's failure to offer to sell the premises to the franchisee or to offer to the franchisee a right of first refusal (assuming that the nonrenewal was due to a sale of the marketing premises as opposed to a simple loss of the franchisor's right to grant possession of the marketing premises).

*Patel* does not require denial of either defendant's motion here. The *Patel* court's statement concerning a right of action for damages for the franchisor's failure to offer to sell or to offer a right of first refusal was not conclusive, inasmuch as the court remanded the case to give the Patels "the opportunity to present to the district court their contention that the nonrenewal of their franchise violates § 2802 because the reason given for nonrenewal, the expiration of the underlying lease, was a condition created by the franchisor when it sold the property without offering the franchisee an opportunity to purchase it." *Patel, supra*, 63 F.3d at 253. Furthermore, even assuming that the franchisees in *Patel* had a right of action for damages arising out of the franchisor's sale of the marketing premises without giving the franchisees an opportunity to purchase the premises, there is one dramatic difference between the facts in *Patel* and those alleged by Mr. Clark: in *Patel*, the sale of the marketing premises led to the complete discontinuance of the use of the premises as a service station, something which has not occurred in Mr. Clark's case.

It is precisely this distinction which renders 15 U.S.C. § 2802(b)(3)(D)(iii), which requires that an offer of sale or right of first refusal be extended by the franchisor to the franchisee in the event the franchisor sells the marketing premises, inapplicable to this case. The statute applies only if the sale of the marketing premises causes nonrenewal of the franchise relationship. *Cf. Cinco J, Inc. v. Boeder*, 920 F.2d 296, 300 (5th Cir. 1991) ("a franchisee's right to purchase the property under section 2802(b)(3)(D) arises only when the franchisor unilaterally seeks to terminate the franchise relationship"). A sale which is part of a refiner-to-distributor assignment, in which the distributor succeeds to the franchisor's obligations, does not terminate the franchise or cause the franchise relationship not to be renewed.

In *Barnes v. Gulf Oil Corporation*, 795 F.2d 358 (4th Cir.1986) (*Barnes I* ), on appeal after remand, 824 F.2d 300 (4th Cir. 1987), on which Mr. Clark also relies, the Court of Appeals for the Fourth Circuit ruled that a franchisee stated a cause of action for constructive termination arising out of the refiner's assignment of its interests in the franchise to a distributor, when the assignment increased the franchisee's cost of motor fuel over the stipulated price in the franchise agreement.[12] In *Barnes I*, however, "[t]he franchise agreement expressly incorporated a contract for the supply of motor fuel that provided that Gulf would sell to Barnes at its dealer tank wagon price," but the refiner's assignee sold motor fuel to the dealer at a mark-up over the dealer tank wagon price which resulted in a price increase of about $1,000.00 per month. *Id.* at 361.

In the case at bar, as the court has stated, the dealer lease and supply agreement provides for "BP's price in effect at the time and place of delivery for franchised dealers," and provides also that "[p]rices for all products [are] subject to change without notice to Dealer." In other words, like the motor fuel supply contracts in *May–Som Gulf, supra*, see 869 F.2d at 924, the supply agreement

---

**12.** The Court of Appeals for the Sixth Circuit discussed *Barnes I* in its opinion in *May–Som Gulf, supra*, 869 F.2d at 922, a fact which de-prives of logic any argument that *Barnes I*, not *May–Som Gulf*, provides controlling authority in this judicial circuit.

between BP and Mr. Clark has an open price term. A price change after the BP-to-Downey assignment cannot, therefore, provide a basis for finding that the assignment somehow violated the PMPA.[13]

For the reasons stated, the court determines that BP is entitled to judgment as a matter of law dismissing the plaintiff's claims governed or preempted by the PMPA. To the extent that Mr. Clark's claims against the defendant Downey are based on the same theories, this defendant, too, is entitled to summary judgment. Furthermore, because BP had the right under the PMPA and Tennessee law to enter into the BP-to-Downey assignment challenged here, the plaintiff can have no claim against Downey on the theory of tortious interference with a contractual relationship or contractual rights.

■ This leaves for consideration Mr. Clark's theories that one or both defendants are liable for breach of contract for inadequate performance of the dealer lease and supply agreement;[14] that BP granted orally to Mr. Clark a right to purchase the marketing premises or a right of first refusal to purchase them, and that both defendants made misrepresentations to the plaintiff to deprive him of this right;[15] that the defendants committed breach of contract and/or fraud for anticompetitive purposes against the public policy of the State of Tennessee;

and that the defendants have violated the provision of the Tennessee Petroleum Trade Practices Act, as amended, T.C.A. § 47–25–611(b), which prohibits a vertically integrated producer from selling motor fuel to its own retail outlet at a price lower than the price which it charges to a dealer operating in the same class or trade and within the same competitive area.[16] These issues are governed by State, not federal, law. The performance of the dealer lease and supply agreement, to the extent it concerns matters other than termination of the franchise, nonrenewal of the franchise relationship, and notice of termination or nonrenewal, is not a subject governed by the PMPA. Nothing in the federal act prohibits a franchisor from agreeing to extend to a franchisee a right to purchase or right of first refusal which is more generous than any mandated by the PMPA. Whether certain conduct violates Tennessee law and/or public policy concerning fair competition is obviously a matter governed by Tennessee law, as is the construction of T.C.A. § 47–25–611(b).[17]

■ The court having decided to dismiss all of Mr. Clark's claims against the defendants which arise under federal law, it is appropriate to remand these remaining claims, in which State law predominates, to the Blount County Circuit Court, either under 28 U.S.C. § 1441(c)[18], or under the

---

13. Mr. Clark's affidavit testimony [doc. 31] that his understanding was "that BP has a base price charged to all dealers such as myself served out of the Knoxville terminal" does not create a genuine issue of fact on this point, given the undisputed language of the dealer lease and supply agreement. For the same reason, the pricing data submitted by the plaintiff, and the analysis of the data by Howard Cox, a certified public accountant, are irrelevant here.

14. In his affidavit filed in opposition to the motions to dismiss or for summary judgment [doc. 31], Mr. Clark states, for example, that Downey is not providing the level of station maintenance required by the dealer lease and supply agreement.

15. Mr. Clark's affidavit testimony creates a factual issue on this point.

   Whether any such oral promise was made and, if made, is enforceable raises issues concerning the Statute of Frauds and estoppel governed exclusively by Tennessee law.

16. The plaintiff has elected not to pursue his claim of sustained below-cost selling at retail in violation of T.C.A. § 47–25–611(a)(1). [See doc. 32 at 44.]

17. Mr. Clark appears to make the argument that BP and Downey may be considered together as a single vertically integrated producer in this case for the purpose of applying the Tennessee statute, or that BP may be treated as a vertically integrated producer selling at retail because Downey stands in BP's shoes in this case. Either argument presents novel issues under T.C.A. § 47–25–611(b) with respect to which only a Tennessee court, as opposed to a federal district court, could make an authoritative ruling.

18. The defendant Downey being a Tennessee corporation, had there not been federal-question jurisdiction of the subject matter of this civil action, the defendants could not have removed it to this court. See the second sentence of 28 U.S.C. § 1441(b).

court's discretionary power recognized in *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill, supra,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619. Here, this litigation has not progressed beyond the point of consideration of the defendants' motions. The plaintiff and the defendant Downey are found in Blount County, and it does not appear that requiring the defendant BP to litigate in the circuit court sitting in Maryville would cause it any more inconvenience than requiring it to litigate in this district court sitting in Knoxville. A remand would preserve the plaintiff's choice of forum. The remaining issues, as the court has stated above, merit the close attention of the Tennessee, not the federal, judiciary.

For the reasons stated, the court will grant the defendants' motions in part, and dismiss all of the plaintiff's claims against them except these Tennessee-law claims. The court will remand this civil action to the Blount County Circuit Court for consideration of these remaining claims.