RICHARDSON v. BP OIL CO.

[124 N.C. App. 509 (1996)]

———

G. DALE RICHARDSON, d/b/a EMERYWOOD SERVICES, INC., PLAINTIFF-APPELLANT v. BP OIL COMPANY, M.M. FOWLER, INC., BP DOES' 1-50, MARVIN L. BARNES, LEE BARNES AND TOM LINDLEY, DEFENDANT-APPELLEES

No. COA96-247

(Filed 19 November 1996)

1. **Gas and Oil § 7 (NCI4th); Sales § 13 (NCI4th)— assignment of fuel supply agreement—no violation of Petroleum Marketing Practices Act**

Plaintiff service station franchisee failed to show that his fuel supply agreement with the franchisor was breached and therefore constructively terminated under the Petroleum Marketing Practices Act, 15 U.S.C.A. § 2801 *et seq.*, by the franchisor's assignment of its interest in the agreement to defendant assignee on the ground that the assignee is charging plaintiff higher prices for gasoline than he would have been charged by the franchisor where the exhibits in the record failed to show that plaintiff was paying more for gasoline to the assignee than he would have been paying to the franchisor if the assignment had not been made. N.C.G.S. §§ 25-2-210(1), (2).

**Am Jur 2d, Sales §§ 375 et seq.**

RICHARDSON v. BP OIL CO.

[124 N.C. App. 509 (1996)]

**2. Gas and Oil § 7 (NCI4th); Landlord and Tenant § 20 (NCI4th)— sale of service station—assignment of lease— Petroleum Marketing Practices Act—no constructive termination of franchise**

Plaintiff service station franchisee's lease of a service station from the franchisor (BP) was not constructively terminated under the Petroleum Marketing Practices Act by the franchisor's sale of the service station and assignment of the lease because the lease included language that plaintiff "desires to lease a facility owned or leased by BP" and BP no longer owns the service station, since the lease agreement did not require BP to own or lease the service station during the time plaintiff was to occupy the premises, and no provision precluded BP from selling or subleasing the service station during the term of the lease.

**Am Jur 2d, Landlord and Tenant §§ 1081, 1176 et seq.**

**Liability of lessee who assigns lease for rent accruing subsequently to extension or renewal of term. 10 ALR3d 818.**

**3. Gas and Oil § 7 (NCI4th)— service station franchise— assignee's change of terms upon renewal—good faith—no prohibited "nonrenewal"**

There was no "nonrenewal" of a service station franchise agreement prohibited by the Petroleum Marketing Practices Act because, as a condition for the renewal of that agreement by the franchisor's assignee after the expiration of the original term of the agreement, the minimum gasoline sales requirements and the monthly rent amount were increased, where there was no evidence that the assignee breached its duty to use good faith when negotiating a renewal of the agreement and changing the terms of the agreement upon renewal.

**Am Jur 2d, Franchises § 21.**

**4. Appeal and Error § 447 (NCI4th)— theory first raised on appeal**

Plaintiff service station franchisee could not argue on appeal that a purchase of the service station by the franchisor's assignee constituted an unfair or deceptive practice in violation of N.C.G.S. § 75-1.1 where this argument was not made in the trial court.

**Am Jur 2d, Appellate Review §§ 690 et seq.**

## RICHARDSON v. BP OIL CO.

[124 N.C. App. 509 (1996)]

Appeal by plaintiff from judgment entered 14 November 1995 in Wake County Superior Court by Judge Henry W. Hight, Jr. Heard in the Court of Appeals 30 October 1996.

*Blanchard, Jenkins & Miller, P.A., by Charles F. Blanchard and Robert O. Jenkins, Hafer, McNamara, Caldwell, Carraway, Layton, McElroy & Cutler, P.A., by Edmond W. Caldwell, Jr., and The Daskal Law Group, by Dimitri G. Daskal, for plaintiff-appellant.*

*Petree Stockton, L.L.P., by F. Joseph Treacy, Jr. and Keith J. Merritt, for defendant-appellee BP Oil Company.*

*Hutson Hughes & Powell, P.A., by James H. Hughes, for defendant-appellees M.M. Fowler, Inc., Marvin Barnes, Lee Barnes and Tom Lindley.*

GREENE, Judge.

G. Dale Richardson (Richardson), doing business as Emerywood Services, Inc. (plaintiff), appeals summary judgment for BP Oil Company (BP), M.M. Fowler, Inc. (Fowler), BP Does' 1-50, Marvin L. Barnes, Lee Barnes, and Tom Lindley (collectively defendants).

The undisputed evidence is that James Clepper (Clepper), president of Emerywood signed a "Dealer Lease and Supply Agreement" (BP Agreement) with BP to operate a BP service station in High Point, North Carolina. The BP Agreement covered a period of time from 2 June 1992 through 1 June 1995. Pursuant to the BP Agreement, plaintiff leased the service station and agreed to sell BP branded products to plaintiff's customers. BP agreed to supply the BP branded products. The BP Agreement provided in part that "[p]rices for all products purchased by [plaintiff] from BP shall be BP's price in effect at the time and place of delivery for franchised dealers. Prices for all products shall be subject to change without notice to [plaintiff]."

In January 1994, BP transferred its interest in the service station to Fowler and assigned the BP Agreement to Fowler. On 2 June 1995, one day after the expiration of the BP Agreement, Fowler offered another Dealer Lease and Supply Agreement to plaintiff, which was accepted and signed by Clepper and plaintiff. Directly below his signature, plaintiff wrote, "All rights reserved. No release, novation, or waiver of any kind."

Under the new agreement, plaintiff continues to be a BP service station, selling BP products to its customers. Plaintiff, however,

alleges that under this new agreement, plaintiff is being charged a higher price for BP fuel than he would have paid under the BP Agreement, has higher minimum gasoline sales requirements and pays an increased monthly rent.

Plaintiff's complaint alleges that the sale and assignment to Fowler was in violation of 15 U.S.C.A. § 2801 through 2806 (1982), the Petroleum Marketing Practices Act (Act), and constituted unfair or deceptive practices pursuant to N.C. Gen. Stat. § 75-1.1 (1994). The trial court granted defendants' separate motions for summary judgment.

---

The issues are whether (I) the sale/assignment to Fowler violates the Act because it constitutes a constructive termination of the BP Agreement in that (A) Fowler charges prices for fuel which are higher than those charged by BP, (B) it includes language that plaintiff "desires" to lease a facility "owned or leased by BP"; (II) Fowler's renewal of the BP Agreement constituted a "nonrenewal" within the meaning of the Act because the rent and minimum sales requirements were increased; and (III) the purchase by Fowler of the service station constitutes an unfair or deceptive practice.

The Act "establishes minimum federal standards governing the termination and nonrenewal of motor fuel marketing franchises." *May-Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917, 921 (6th Cir. 1989). Specifically, the Act provides in pertinent part:

(a) Except as provided in subsection (b) of this section and section 2803 of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—

(1) terminate any franchise . . . prior to the conclusion of the term, or the expiration date, stated in the franchise; or

(2) fail to renew any franchise relationship . . . .

15 U.S.C.A. § 2802(a). A constructive termination exists upon a showing:

(1) that by making the assignment, the franchisor breached one of the three statutory components of the franchise agreement, (the contract to use the refiner's trademark, the contract for the supply of motor fuel, or the lease of the premises), and thus, violated the [Act]; or (2) that the franchisor made the assignment in violation of state law . . . .

*May-Som Gulf*, 869 F.2d at 922.

RICHARDSON v. BP OIL CO.

[124 N.C. App. 509 (1996)]

Although the Act prohibits termination and nonrenewals except in certain defined situations, the Act does not prohibit assignments if "authorized by the provisions of such franchise or by any applicable provision of State law." 15 U.S.C.A. § 2806(b). In North Carolina assignments for the sale of goods are permitted:

(1) . . . unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. . . . [or]

(2) Unless . . . the assignment would . . . increase materially the burden or risk imposed on [the other party] by his contract, or impair materially his chance of obtaining return performance. . . .

N.C.G.S. § 25-2-210(1), (2) (1995).

I

*Termination*

A

**[1]** Plaintiff first argues that the fuel contract has been breached, and therefore the BP Agreement was constructively terminated, because Fowler is charging him higher prices for fuel than he would have been charged by BP. Defendants contend that because the BP Agreement expressly states that "[p]rice for all products shall be subject to change without notice to [plaintiff]," "B.P.'s price" can be read to mean "seller's price" and because Fowler is now the "seller," BP's price is irrelevant.

Assuming without deciding that the BP Agreement must be read to mean "B.P.'s price," the plaintiff has failed to show that BP's price for fuel was more than the price Fowler was charging him for fuel. The plaintiff points to a chart, contained in his brief to this Court, which shows that Fowler was charging the plaintiff more for fuel than BP was charging its similarly situated customers for fuel at various times since the date of the assignment. This chart, although apparently presented to the trial court, is not included in the record before this Court, and therefore cannot be considered by this Court as evidence. *Civil Service Bd. v. Page*, 2 N.C. App. 34, 40, 162 S.E.2d 644, 648 (1968) (brief is not part of the record). Furthermore, we are unable to discern from our review of the exhibits in the record that plaintiff was paying more for fuel to Fowler than he would have been paying to BP had the assignment not been made. Accordingly, there is no evidence of constructive termination on this basis.

RICHARDSON v. BP OIL CO.

[124 N.C. App. 509 (1996)]

B

[2] Plaintiff also argues that the lease contract was breached, and therefore the BP Agreement was constructively terminated, because after the sale of the property to Fowler, BP no longer owned the service station and the BP Agreement states that plaintiff "desires to lease a facility owned or leased by BP."

We do not read the BP Agreement as requiring that BP continue to own or lease the premises on which the service station is located. There is no language requiring BP to own or lease the service station during the entire period of time the plaintiff was to occupy the premises. Furthermore, there is no provision precluding BP from selling or subleasing the service station during the term of the BP Agreement. Accordingly, we reject this argument of the plaintiff. *See Clark v. BP Oil Co.*, 930 F. Supp. 1196, 1204 (E.D. Tenn. 1996); 51C C.J.S. *Landlord & Tenant* § 31, at 75 (lessor may assign his entire interest in the lease in the absence of a provision to the contrary).

II

*Nonrenewal*

[3] Plaintiff contends that BP's assignment to Fowler is in violation of North Carolina law and therefore a constructive termination. Specifically, plaintiff argues that after the expiration of the original term of the BP Agreement and as a condition for the renewal of that Agreement, the minimum gasoline sales requirements were increased and the monthly rent amount was increased.

We reject the plaintiff's argument that increases in rent and minimum gasoline sales requirements, imposed after the expiration of the original BP Agreement, constitute a constructive termination. The question instead is whether the terms and conditions of the renewal agreement, negotiated after the expiration of its original term, were made in "good faith." 15 U.S.C.A. § 2802(b)(3)(A)(i). If not made in good faith, the renewal is tantamount to a "nonrenewal" within the meaning of the Act (not a constructive termination) and is therefore prohibited. *See* 15 U.S.C.A. § 2802(a)(2). There is no obligation of the franchisor to renew a franchise under the same terms and conditions, and in fact the Act anticipates that the terms of the franchise agreement may be changed upon renewal. *See Clarke*, 930 F. Supp. at 1206; 15 U.S.C.A. § 2802(b)(3).

In this case, the plaintiff makes no argument that Fowler negotiated a renewal of the BP Agreement in bad faith and our review of the

record reveals no evidence that Fowler breached his duty to use good faith when changing the terms of the BP Agreement upon renewal. Accordingly, there has been no "nonrenewal" within the meaning of the Act.

## III

[4] Plaintiff finally argues that Fowler's purchase of the service station constitutes an unfair or deceptive practice in violation of N.C. Gen. Stat. § 75-1.1 (1994). The record does not reflect that this argument was made in the trial court and it therefore cannot be made for the first time in this Court. *River Birch Assocs. v. City of Raleigh,* 326 N.C. 100, 131, 388 S.E.2d 538, 556 (1990) (failure to argue a theory of recovery below prohibits its assertion on appeal). It is not sufficient that another distinctive ground for support of its Chapter 75 claim ("conspiracy . . . to engage in resale price maintenance, as well as vertical price fixing") was argued in the trial court.

The trial court's grant of summary judgment for the defendants is therefore

Affirmed.

Judges LEWIS and WYNN concur.