Upinder **SAWHNEY** d/b/a Chestnut Mobil, Plaintiff,

v.

**MOBIL OIL CORPORATION and Ross Fogg Fuel Corporation, Defendants.**

**Civil Action No. 96–5875(JEI).**

United States District Court, D. New Jersey.

July 10, 1997.

Steven I. Kaplan, Northfield, NJ, Dimitri G. Daskal, Annapolis, MD, for Plaintiff.

Wolff & Samson by Harlan L. Cohen, Paul M. Colwell, Roseland, NJ, for Mobil Oil Corp. ("Mobil").

John G. Hoffman, John T. Lenahan, Woodstown, NJ, for Ross Fogg Fuel Oil Corp. ("Ross").

## OPINION

IRENAS, District Judge:

Plaintiff franchisee instituted this action on December 18, 1996 alleging that defendants destroyed his franchise relationship in contravention of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–06, the Robinson–Patman Act, 15 U.S.C. § 13, and New Jersey tort law. Defendants now move this Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Because Mobil's transfer of its franchise rights to Ross Fogg is valid under the PMPA, because plaintiff's complaint fails to state a prima facie case under the Robinson–Patman Act, and because this Court lacks supplemental jurisdiction over plaintiff's common-law tort claim, the Court will grant defendants' motion to dismiss.

## I. BACKGROUND [1]

Plaintiff has operated a gasoline filling station under a franchise relationship with Mo-

---

1. The facts in this section are drawn from the allegations contained in plaintiff's complaint.

bil for over four years. *See* Complaint ¶ 5. Plaintiff leased the station from Mobil, operated the station under Mobil's trademark, and sold Mobil-branded gasoline. *See id.* ¶¶ 1, 9–10. Plaintiff claims that he qualifies as a Mobil franchisee under the PMPA, and thus that he has reasonable expectations of renewal of that relationship. *See id.* ¶ 6.

Sometime in 1995, plaintiff first learned that Mobil intended to sell its interests in several gasoline filling stations, including his. *See id.* ¶ 10. Plaintiff alleges that he conveyed to Mobil his desire to purchase his station but that Mobil ignored him. *See id.* ¶ 11. On December 21, 1995, Mobil transferred its franchise rights to Ross Fogg and, according to plaintiff, "illegally sever[ed] and nonrenew[ed] all ties" to plaintiff. *Id.* ¶ 12.

Following the transfer, Ross Fogg has continued to lease the station to plaintiff, license Mobil's trademark to him, and provide him with Mobil-branded gasoline. *See id.* ¶ 12. Plaintiff contends, however, that Ross Fogg now charges him more for gasoline than Mobil had charged previously, and that Ross Fogg provides him with fewer services than Mobil had provided previously. *See id.* ¶ 13.

On December 18, 1996, plaintiff filed the instant complaint, asserting ten separate causes of action against Mobil and Ross Fogg. Most of these allege that Mobil's assignment to Ross Fogg violated the PMPA. Plaintiff also alleges violation of the Robinson–Patman Act, 15 U.S.C. § 13, and New Jersey tort law. *See id.* ¶ 35 (alleging tortious interference with plaintiff's contractual rights).

## II. MOTION TO DISMISS

### A. *Applicable Standard*

■ Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, a court will accept the allegations of the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Although the court must assume as true all facts alleged, "[i]t is not ... proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated General Contractors of Calif. Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). Finally, when "[c]onfronted with [a 12(b)(6) ] motion, the court must review the allegations of *fact* contained in the complaint: for this purpose the court does not consider conclusory recitations of law." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir.1988) (emphasis added).

### B. *PMPA Claims*

■ The PMPA regulates the relationship between motor fuel distributors, principally oil refiners, and their franchisees, principally retail gas station operators. Prior to the passage of the PMPA, evidence suggested that "distributors had been using the threat of termination or nonrenewal to compel franchising policies ... [and] to gain an unfair advantage in contract disputes." *Slatky v. Amoco Oil Co.,* 830 F.2d 476, 478 (3d Cir. 1987) (in banc). Accordingly. in passing the PMPA, Congress sought to protect "franchisees from arbitrary or discriminatory termination or nonrenewal," and adopted minimum standards governing the termination or nonrenewal of a petroleum franchise. S.Rep. No. 95.–731 at 15, *reprinted in* 1978 U.S.C.C.A.N. at 873, 874. Consistent with this overriding purpose of protecting franchisees, courts have recognized the remedial nature of the PMPA and construed its terms liberally. *See Beachler v. Amoco Oil Co.,* 112 F.3d 902, 904 (7th Cir.1997); *Hilo v. Exxon Corp.,* 997 F.2d 641, 643 (9th Cir.1993); *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.,* 940 F.2d 744, 750 (1st Cir.1991); *May–Som Gulf, Inc. v. Chevron U.S.A., Inc.,* 869 F.2d 917, 921 (6th Cir.1989).

■ Because the PMPA also serves to diminish franchisors' property rights, however, courts have taken care not to interpret the Act "beyond its original language and purpose." *May–Som,* 869 F.2d at 921, *see*

also *Beachler,* 112 F.3d at 904–05; *Chestnut Hill,* 940 F.2d at 750. Indeed, the legislative history of the PMPA reveals that Congress sought to "protect a franchisee's 'reasonable expectation' of continuing the franchise relationship while at the same time insuring that distributors have 'adequate flexibility ... to respond to changing market conditions and consumer preferences.'" *Patel v. Sun Co.,* 63 F.3d 248, 250 (3d Cir.1995) (quoting S.Rep. No. 95–731 at 19 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 877). Thus, the PMPA represents a "product of compromise," "afford[ing] franchisees important but limited procedural rights, while allowing franchisors significant latitude in responding to changing market conditions." *Valentine v. Mobil Oil Corp.,* 789 F.2d 1388, 1390 (9th Cir.1986); *see also Beachler,* 112 F.3d at 904–05.

The centerpiece of the PMPA is its prohibition on franchisor termination or nonrenewal of franchises. Unless a franchisee makes an initial showing that his franchise has been terminated or not renewed, he cannot invoke the protections of the PMPA. *See Beachler,* 112 F.3d at 905. Therefore, on a motion to dismiss, a franchisee must allege a termination or nonrenewal of his franchise within the meaning of the PMPA. Plaintiff argues that Mobil's assignment of its franchise and lease rights and delegation of its franchise and lease duties to Ross Fogg constitutes such termination or nonrenewal and thus triggers the PMPA.

Numerous courts have addressed the issue of when a franchisor's assignment of rights and delegation of duties amounts to a termination or nonrenewal of the franchise under the PMPA. Nearly all of them have held that assignments and delegations will not rise to the level of a termination or nonrenewal so long as the essential characteristics of the franchise remain intact. *See id.* at 906; *Chestnut Hill,* 940 F.2d at 750–51; *May–Som,* 869 F.2d at 922–23; *Fresher v. Shell Oil Co.,* 846 F.2d 45, 46–47 (9th Cir.

1988); *Clark v. BP Oil Co.,* 930 F.Supp. 1196, 1206 (E.D.Tenn.1996); *Cedar Brook Serv. Station, Inc. v. Chevron U.S.A., Inc.,* 746 F.Supp. 278, 282 (E.D.N.Y.1990), *aff'd,* 930 F.2d 908 (2d Cir.), *cert. denied,* 502 U.S. 819, 112 S.Ct. 77, 116 L.Ed.2d 50 (1991); *Ackley v. Gulf Oil Corp.,* 726 F.Supp. 353 (D.Conn.), *aff'd,* 889 F.2d 1280 (2d Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 941 (1990); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* No. 86–4748, 1990 WL 61787 (D.N.J. May 9, 1990) [hereinafter *Florham Park II* ].[2] These courts reason that a franchisee whose franchise is so assigned loses no rights that the PMPA was designed to protect. Indeed, after the assignment, the franchisee retains his rights under the PMPA if the assignee-now his franchisor-should decide to terminate or not renew his franchise. *See Beachler,* 112 F.3d at 906; *Fresher,* 846 F.2d at 47; *Cedar Brook,* 746 F.Supp. at 282, 283; *Ackley,* 726 F.Supp. at 363; *cf. Patel,* 63 F.3d at 252 n. 6.

However, two important exceptions to this general rule have evolved in the caselaw. First, an assignment may result in a breach of one of the three statutory elements of a PMPA franchise: the contract to use the refiner's trademark, the contract for the supply of its motor fuel, and the lease of the service-station premises. *See Beachler,* 112 F.3d at 906; *Chestnut Hill,* 940 F.2d at 750–51; *May–Som,* 869 F.2d at 922; *Fresher,* 846 F.2d at 46–47; see also 15 U.S.C. § 2801(1)(A) (setting forth the franchise elements). If such a breach occurs, an essential characteristic of a PMPA franchise is then lost to the franchisee, and the assignment will be deemed a constructive termination of the franchise. Second, an assignment may violate applicable rules of state assignment law. *See Beachler,* 112 F.3d at 906; *Chestnut Hill,* 940 F.2d at 751; *May–Som,* 869 F.2d at 922. The PMPA neither authorizes nor prohibits the assignment of one's franchise rights and the delegation of one's franchise duties. Instead, the Act leaves such

---

**2.** The only cases holding otherwise are *Florham Park Chevron v. Chevron U.S.A., Inc.,* No. 86–4748, 1987 WL 17496 (D.N.J. Sept. 25, 1987), which was later withdrawn by a different judge on a motion to· reconsider, *see Florham Park II,* 1990 WL 61787, and *John & Kostas Serv. Station, Inc. v. Cumberland Farms, Inc.,* 738 F.Supp. 607 (D.Mass.1990), which was later overruled by the First Circuit. *See Chestnut Hill,* 940 F.2d at 751.

matters to state law. *See* 15 U.S.C. § 2806(b)(1).[3] Accordingly, an assignment that proves invalid under state law will also result in a termination of the franchise prohibited by the PMPA.

██ Plaintiff has not alleged a violation of the components of a PMPA franchise. Although Mobil has transferred title of the filling station to Ross Fogg and now supplies plaintiff with gasoline and trademarks through Ross Fogg as middle-man, plaintiff continues to use Mobil's trademarks, purchase Mobil-branded gasoline, and lease its service-station premises. *See* Complaint ¶ 12.[4] The three basic elements of plaintiff's PMPA franchise thus remain intact and, under PMPA law, Mobil has not constructively terminated plaintiff's franchise. *See Beachler,* 112 F.3d at 907; *DuFresne's Auto Serv., Inc. v. Shell Oil Co.,* 992 F.2d 920, 928 (9th Cir.1993); *Chestnut Hill,* 940 F.2d at 752; *May–Som,* 869 F.2d at 923. The first exception to the general rule on assignments therefore does not apply.

██ The second exception to the general rule on assignments does not apply, either. New Jersey law permits the assignment of contractual rights and the delegation of contractual duties in the absence of an express agreement to the contrary. *See Aronsohn v. Mandara,* 98 N.J. 92, 99, 484 A.2d 675, 678 (1984); *Schlessinger v. Forest Prods. Co.,* 78 N.J.L. 637, 642–45, 76 A. 1024, 1026–27 (1910); *see also* N.J.S.A. § 12A:2–210 (governing contracts for the sale of goods, e.g., gasoline). The franchise agreement expressly-but not exclusively-permits

assignments to affiliates. *See* Franchise Agreement § 15(d).[5] Mobil's assignment of rights and delegation of duties to Ross Fogg is thus valid under New Jersey law and under the PMPA. Accordingly, Mobil's assignment and delegation does not, in and of itself, constitute a termination or nonrenewal of plaintiff's franchise.

██ To be sure, Mobil's delegation of its contractual duties does not relieve it of its duty to perform under the franchise agreement, or its liability to plaintiff in case of a breach. *See* N.J.S.A. § 12A:2–210(1) ("No delegation of performance relieves the party delegating of any duty to perform or any liability for breach."); *Schlessinger,* 78 N.J.L. at 642–45, 76 A. at 1026–27. Thus, Mobil must stand behind the promise it made (and thereafter delegated to Ross Fogg) to renew plaintiff's PMPA franchise at the close of its term.[6] Had plaintiff agreed to substitute Ross Fogg for Mobil as his PMPA franchisor, the Mobil–Ross Fogg transaction would be a novation, as opposed to an assignment of rights and a delegation of duties, *see generally* Restatement (Second) of Contracts § 280 (1981), and plaintiff's consent to the substitution would have relieved Mobil of its obligations under the franchise agreement.[7]

██ Plaintiff does not allege any cognizable breach of its franchise agreement. Plaintiff alleges that he can no longer purchase gasoline at Mobil's dealer tankwagon prices, and that Ross Fogg provides certain "support services" to a lesser extent than did Mobil. However, specific gasoline prices and support services are neither required by

---

**3.** The language of section 2806(b)(1) refers to assignments of any franchise, and section 2801(1) defines franchise as "any contract" including the three elements listed above.

**4.** See also *Patel v. Sun Co.,* 866 F.Supp. 871, 873 (E.D.Pa.1994) (explicitly holding that the sale of a service station does not constitute a constructive termination under the PMPA); *Florham Park II,* 1990 WL 61787, at *4–*6 (finding no constructive termination under the PMPA where a franchisor sold a service station to another).

**5.** Plaintiff incorporated the franchise agreement by reference into paragraph fourteen of his complaint. *See* Fed.R.Civ.P. 10(c) (regarding incorporating written documents by reference into complaints). Accordingly, the Court may consid-

er the Franchise Agreement on this motion to dismiss.

**6.** Mobil must also stand behind the promises its delegate Ross Fogg makes in any renewed franchise agreement it makes with plaintiff.

**7.** Although it is outside of the pleadings and not a proper consideration on a motion to dismiss, the Court notes that Ross Fogg offered to renew his franchise agreement with plaintiff in December of 1996. *See* Hoffman Cert. ¶¶ 2–3. Plaintiff has yet to accept this offer. *See id.* ¶ 3. The Court also notes that Ross Fogg offered to sell the gasoline filling station to plaintiff at its cost. *See* Daughtrey Cert. ¶ 4. Plaintiff rejected this offer. *See id.*

plaintiff's franchise agreement with Mobil, see Franchise Agreement §§ 2(b), 7(a), nor required by the PMPA. *See* 15 U.S.C. § 2801(1)(B) (setting forth the requirements of a franchise under the PMPA); *cf. May-Som,* 869 F.2d at 924–25 (rejecting nearly identical claims); *Florham Park II,* 1990 WL 61787, at *7 (same); *Ackley,* 726 F.Supp. at 367–69 (same). Thus, plaintiff's complaint fails to state a claim under the PMPA upon which relief can be granted. The Court will dismiss plaintiff's PMPA claims accordingly.

### C. *Federal Antitrust Claim*

The eighth count of plaintiff's complaint asserts that Mobil discriminates in the price of Mobil-branded gasoline in plaintiff's geographical market. Specifically, plaintiff alleges that Mobil will no longer sell gasoline to him directly at its dealer tank-wagon prices and instead plaintiff must purchase gasoline through Mobil's distributor, Ross Fogg, at higher prices. For relief, plaintiff relies on the Robinson–Patman Act, 15 U.S.C. § 13, which creates a remedy against a manufacturer or producer who discriminates in the price of like goods among competitive purchasers. *See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.,* 63 F.3d 1267, 1271–73 (3d Cir.1995). However, a manufacturer may sell to some of its retailers through wholesale distributors and not run afoul of the Robinson–Patman Act. *See Chicago Sugar Co. v. American Sugar Refining Co.,* 176 F.2d 1 (7th Cir.1949) (permitting a manufacturer to sell some of its products through a wholesaler at a lower price and some of its goods to a retailer at a higher price), *cert. denied,* 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584 (1950). Further, to set forth a cause of action under the Robinson–Patman Act, plaintiff must show that as of the time a defendant imposed a price differential, "the favored and disfavored purchasers competed at the same functional level, i.e., all wholesalers or all retailers, and within the same geographic market." *Stelwagon,* 63 F.3d at 1271; *see also Chicago Sugar,* 176 F.2d at 1. Because Mobil may sell to some of its retailers through wholesaler distributors such as Ross Fogg, and because Ross Fogg and plaintiff do not compete at the same functional level, plaintiff fails to state a Rob-

inson–Patman claim against Mobil upon which relief can be granted. The Court will therefore dismiss plaintiff's federal antitrust claim, as well.

### D. *Common–Law Tort Claim*

The tenth count of plaintiff's complaint sounds in common-law tort. Specifically, plaintiff alleges that Ross Fogg intentionally interfered with plaintiff's contractual rights. Because this Court will dismiss plaintiff's federal claims for failure to state a claim upon which relief can be granted, the Court lacks supplemental jurisdiction over plaintiff's remaining tort-law claim. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Court will dismiss this claim, as well.

### III. CONCLUSION

Because Mobil's transfer of its franchise rights to Ross Fogg is valid under the PMPA, because plaintiff's complaint fails to state a prima facie case under the Robinson–Patman Act, and because this Court lacks supplemental jurisdiction over plaintiff's common-law tort claim, the Court will grant defendants' motion to dismiss. An appropriate order will issue on even date herewith.