UNIFIED DEALER GROUP, a California Nonprofit Corporation, et al., Plaintiffs,

v.

TOSCO CORPORATION, a Nevada corporation, et al., Defendants.

No. C 98–00179 CRB.

United States District Court, N.D. California.

Sept. 11, 1998.

**1138**

Brian M. O'Dea, Randick & O'Dea, Oakland, CA, for Plaintiffs.

David E. Novitski, Latham & Watkins, Los Angeles, CA, for Defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

The lawsuit presents an issue of first impression: whether the Petroleum Marketing Practices Act ("PMPA") permits a franchisor to condition renewal of a motor fuel franchise upon a change in the franchise trademark. Currently pending before the Court is the motion of defendants Tosco Corporation and Tosco Northwest Company ("Tosco") for summary judgment on plaintiffs' complaint. After carefully considering the papers submitted by the parties, including their supplemental memoranda, and having had the benefit of oral argument on June 11, 1998 and August 24, 1998, the motion for summary judgment is GRANTED.

## BACKGROUND

### I. *Factual Background*

Tosco is an independent refiner and marketer of petroleum products without its own source of crude oil. Tosco sells refined petroleum products, including motor fuel, at the wholesale and retail level. In 1994, Tosco acquired from BP Exploration & Oil, Inc. ("BP Exploration") all service station properties owned or leased by BP Exploration in Northern California, together with marketing distribution facilities. Tosco also acquired from BP Exploration a license to use the "BP" trademark in California. The license expires on August 1, 2006. In connection with the license, Tosco pays a royalty to BP Exploration. Beginning in August 1999, the amount of the royalty fee for the license will increase.

BP Exploration terminated its franchise agreements, in connection with its withdrawal from the California market, with an effective termination date of January 15, 1995. Tosco subsequently offered each of the BP franchisees a new franchise agreement. The plaintiff BP service station dealers have accordingly been Tosco franchisees since early 1995. They (or their predecessors) have been operating under the BP brand name since 1989, when BP Exploration purchased the service stations from Mobil Oil. The franchise agreements entered into between Tosco and each plaintiff were for an initial term of three years to expire on January 16, 1998. These franchises were extended by mutual agreement to expire on April 15, 1998.

On March 31, 1997, Tosco purchased from the Union Oil Company of California ("Union") the 76 Products Company which included approximately 900 service stations in California. Tosco also acquired the exclusive right to use the "Union 76" and "76" trademarks in perpetuity. In connection with the purchase, Tosco entered into franchises with the Union service station dealers.

From March through September 1997, Tosco began to analyze the efficiencies that could be realized by marketing its motor fuel under one brand in California, instead of both the Union 76 and BP brands. Tosco subsequently decided to "rebrand" its existing BP service stations to Union 76 stations and authorized a capital expenditure of more than $22 million to carry-out the rebranding.

In December 1997, prior to the expiration of plaintiffs' franchise agreements, Tosco offered to renew its franchise relationship with each plaintiff. It offered each plaintiff the same franchise agreement. Tosco's offer of renewal included the condition that the service station market its fuel under the Union 76 trademark. The plaintiff service station dealers refused to agree to the change in the trademark. Tosco subsequently gave the plaintiffs notice that it was not renewing its franchise relationship with plaintiffs on the ground that plaintiffs had refused to agree to a change in a provision of the franchise within the meaning of 15 U.S.C. § 2802(b)(3)(A). This lawsuit followed.

## II. *Procedural History.*

Plaintiffs filed this lawsuit in January, 1998. They allege that Tosco's insistence on a rebranding of its BP stations to the Union 76 trademark violates the PMPA and is a breach of the franchise agreements. The Court granted a preliminary injunction, enjoining Tosco from terminating the franchises, on April 9, 1998 on the ground that "[t]he question of whether defendants' demand that plaintiffs rebrand as a condition of renewing the franchise relationship is a proposed change 'in the provision of the franchise,' within the meaning of 15 U.S.C. § 2802(b)(3)(A), is a sufficiently serious question going to the merits to make such question a fair ground for litigation."

Tosco subsequently moved for summary judgment. After reviewing the parties' memoranda, and hearing oral argument on June 11, 1998, the Court continued the motion for summary judgment to give plaintiffs the opportunity to conduct discovery on whether Tosco made the decision to rebrand in good faith in the normal course of business, and in particular, whether it in good faith considered whether to rebrand those BP stations that are in close proximity to, and therefore in competition with, preexisting Union 76 stations. After the parties simultaneously filed supplemental memoranda, the Court heard oral argument on August 23, 1998.

## DISCUSSION

### I. THE PMPA CLAIM.

■ The PMPA was adopted in 1978 in response "to a widespread perception that the petroleum marketing industry was undergoing drastic changes, with a trend toward fewer stations." *Valentine v. Mobil Oil Corp.,* 789 F.2d 1388, 1390 (9th Cir. 1986). The purpose of the Act was to correct what Congress "perceived as an inequality in bargaining power between distributors of petroleum products and their franchisees by giving franchisees certain protections from arbitrary termination or nonrenewal." *Id.* The PMPA provides franchisees with certain procedural rights, *see* 15 U.S.C. § 2804, and delineates the grounds upon which a franchisor may terminate a franchise or refuse to renew a franchise relationship upon expiration of a franchise agreement. *See* 15 U.S.C. § 2802. A "franchise" consists of a contract between a franchisor and a franchisee, *see* 15 U.S.C. § 2801(1), and a "franchise relationship" consists of the mutual obligations and responsibilities of the parties arising form the marketing of motor fuel under a franchise. *See id.* § 2801(2). "Under the PMPA, the franchisor has (absent specific cause) an obligation to renew only the franchise relationship, not the particular franchise." *Valentine,* 789 F.2d at 1391; *see also Svela v. Union Oil Company of California,* 807 F.2d 1494, 1500 (9th Cir.1987) (same).

Tosco gave plaintiffs notice that it was refusing to renew its franchise relationship with plaintiffs pursuant to 15 U.S.C. § 2802(b)(3)(A) which provides as follows:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor or otherwise preventing the renewal of the franchise relationship.

Plaintiffs contend that Tosco's nonrenewal violates the PMPA because (1) changing the franchise trademark is not a change to the provisions of the franchise, but rather, a termination of the franchise; and (2) Tosco's decision does not meet the requirements of subsections (i) and (ii). In a PMPA matter, the franchisor, here Tosco, bears the burden of going forward with evidence to establish as an affirmative defense that the nonrenewal of the franchise relationship complies with the PMPA. *See* 15 U.S.C. § 2805(c); *Valentine*, 789 F.2d at 1391.

### A. Whether A Franchisor May Condition Renewal Upon a Rebranding.

The Court's analysis of whether the PMPA permits nonrenewal on the ground that a franchisee has refused to agree to a rebranding must begin with the language of the PMPA. *See Valentine*, 789 F.2d at 1390. There are three elements to a PMPA franchise: "the contract to use the refiner's trademark, the contract for the supply of motor fuel, and the lease of the service station premises." *Sawhney v. Mobil Oil Corp.*, 970 F.Supp. 366, 371 (D.N.J.1997); 15 U.S.C. § 2801(1)(A) (identifying the franchise elements).

Plaintiffs argue that Tosco's insistence on a rebranding violates the PMPA because it eliminates one of the essential elements of a PMPA franchise: the trade-

mark. Since Tosco and plaintiffs' franchise relationship was based upon the BP trademark, plaintiffs argue, Tosco's offer to renew under a different trademark—Union 76—was in effect a termination or nonrenewal of the parties' franchise relationship. "What defendant proposed was a new franchise, which would create a new franchise relationship; not a change to an existing franchise which would serve to renew the franchise relationship." Plaintiffs' Memorandum in Opposition to Summary Judgment at 9–10. Plaintiffs also contend that since the PMPA applies only to "branded" motor fuels, *see, e.g.,* 15 U.S.C. § 2801(1)(B)(i); *Pride v. Exxon Corporation,* 911 F.2d 251, 255 (9th Cir.1990), Congress could not have intended that a franchisor may insist on a rebranding as a condition of renewal of a franchise relationship.

Plaintiffs' position is not supported by the language of the PMPA. The PMPA defines franchise to include "*a* trademark which is owned or controlled by" the refiner. 15 U.S.C. § 2801(1)(A) (emphasis added); *see also id.* § 2801(B)(i) (same); *id.* § 2801(B)(ii)(I) (same). The statute nowhere defines a franchise, or more importantly, a franchise relationship, to mean a particular trademark. If Tosco had offered to contract with plaintiffs under no trademark, that is, to sell "unbranded" motor fuel, plaintiffs argument would be well-taken since an essential element of a PMPA franchise is a trademark. Here, however, Tosco has offered to contract with plaintiffs in connection with a trademark. Under a plain reading of the PMPA, Tosco has offered to renew its franchise relationship with plaintiffs; it has offered plaintiffs a contract to use Tosco's trademark, a contract for the supply of motor fuels, and a lease of the motor fuel service station premises.

Plaintiffs also argue that section 2802(c)(6) demonstrates that Congress did not intend for a "rebranding" to be a change in the provision of the franchise within the meaning of section 2802(b)(3)(A). Section 2802(c) is related to section 2802(b)(1)(c). That section provides that a franchisor may terminate a franchise or not renew a franchise relationship if

[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect. . . .

15 U.S.C. § 2802(b)(2)(C). Section 2802(c) then defines "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" as including

loss of the franchisor's right to grant the right to use the trademark which is the subject of the franchise, unless such loss was due to trademark abuse, violation of Federal or State law, or other fault or negligence of the franchisor, which such abuse, violation, or other fault or negligence is related to action taken in bad faith by the franchisor.

15 U.S.C. § 2802(c)(6). Plaintiffs argue that since Congress specifically stated that loss of the right to use the trademark is a ground for termination or nonrenewal, a franchisor cannot terminate or not renew when it has not lost the right to the trademark, but rather simply wants to change trademarks. Plaintiffs' argument is unpersuasive for several reasons.

■ First, section 2802(c)(6) provides a ground for nonrenewal of a franchise relationship or *termination of a franchise*. A franchisor may terminate a franchise agreement before its term expires if it loses the right to the trademark which is the subject of the franchise agreement. *See Russo v. Texaco, Inc.*, 808 F.2d 221 (2nd Cir.1986) (affirming district court's determination that defendant's termination of franchise on ground that it had lost the right to use the trademark which was the subject matter of the franchise was lawful under the PMPA). That Congress would permit a franchisor to terminate a franchise agreement before it has expired if the franchisor loses the right to the trademark which is the subject matter

of the franchise does not suggest that Congress intended that a franchisor could not insist on a rebranding after the franchise agreement has expired.[1] The section of the PMPA under which Tosco gave its notice of nonrenewal, section 2802(b)(3)(A), only applies to nonrenewals of franchise relationships. Under section 2802(b)(3)(A) a franchisor may not *terminate a franchise agreement* because a franchisee refused to agree to ·a change in the provisions of the franchise.

■ Second, section 2802(c)(6) does not provide an exhaustive list of events "which [are] relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." It merely gives examples of events which, as a matter of statutory law, are reasonable grounds for termination or nonrenewal.

Moreover, the language of section 2802(c)(6) suggests that Congress knew how to refer to a particular trademark when it so intended. That section refers to *"the* trademark that is the subject matter of the franchise." 15 U.S.C. § 2802(c)(6) (emphasis added). If Congress had intended that in order to renew a franchise relationship a franchisor would have to maintain the trademark that is the subject of the franchise it could have so stated.

■ Finally, plaintiffs contend that what Tosco is really doing is withdrawing from the "marketing of motor fuel through retail outlets in California, without complying with the PMPA provisions governing market withdrawal." Plaintiffs' Memorandum in Opposition at 13. The PMPA provides that a franchisor may terminate a franchise or not renew a franchise relationship if it made a determination "in ·good faith and in the normal course of business to *withdraw from the marketing of motor fuel through retail outlets* in the relevant geographic market area in which the marketing premises are located, if" the franchisor first offers to sell the premises to the franchisee, or, in the

---

**1.** Tosco contends that plaintiffs did agree that Tosco could rebrand during the term of the plaintiffs' franchise agreements. Plaintiffs dispute that they ever agreed to such terms. For purposes of Tosco's motion for summary judgment, the Court will assume that plaintiffs never agreed that Tosco could rebrand during the term of the franchise agreements or as a condition of renewal of the franchise relationship.

case in which the franchisor's interests in the premises are sold to another person, the person offers the franchisee a new franchise. 15 U.S.C. § 2802(b)(2)(E). Section 2802(b)(2)(E) applies, however, only in the case of a withdrawal from the "marketing of motor fuel through retail outlets." Tosco has not withdrawn from the marketing of motor fuel through retail outlets in California. To the contrary, it continues to market motor fuel through its Union 76 retail outlets and it intends to continue to market motor fuel through its BP retail outlets under the Union 76 brand.

Indeed, the fact that the PMPA allows a "rebranding" if the premises are sold to another who offers a franchise to the franchisee suggests that Congress did not intend to provide a franchisee with a right to market under a particular trademark. These plaintiffs, or their predecessors in interest, were in fact "rebranded" in 1989 when Mobil Oil withdrew from the California market and sold its interests in the motor fuel service stations to BP Exploration. Plaintiffs have not offered any reason why Congress would allow a rebranding when a refiner withdraws from the market, but would not allow a rebranding when a refiner decides in good faith to market its motor fuel under a different brand.

In deciding whether Tosco may condition renewal of a franchise relationship upon a rebranding the Court must keep in mind that in enacting the PMPA Congress was concerned that the Act

> might unduly interfere with the franchisors' property rights, possibly amounting to an unconstitutional taking.... Congress addressed this problem by allowing the franchisor to alter the terms of the franchise at the time of renewal, and to terminate the franchise relationship if agreement could not be reached.... Congress thus viewed the franchisor's ability to change the terms of the franchise and, if agreement could not be reached, the right to end the franchise relationship, as key elements in assuring that the PMPA conforms to constitutional requirements.

*Valentine,* 789 F.2d at 1391–92. Under plaintiffs' interpretation of the PMPA, a fran-

chisor who owns or controls two trademarks and in good faith decides to market its motor fuel under a single brand in a particular region has three choices: (1) continue to market its motor fuel under the preexisting trademarks, (2) sell the motor fuel service stations it wants to rebrand, or (3) withdraw from the marketing of motor fuel by retail outlets in that region all together. There is nothing in the language of the PMPA that suggests, let alone establishes, that Congress intended to so limit the property rights of franchisors. Accordingly, the Court concludes that a change in the trademark which is the subject matter of an expired franchise is a change in the provision of the franchise within the meaning of 15 U.S.C. § 2802(b)(3)(A).

B. *Whether Tosco's Decision To Rebrand Was Made In Good Faith And In The Normal Course Of Business And Not For The Purpose Of Preventing Renewal Of The Franchise.*

■ The Court's inquiry is not over. Tosco has the burden of proving that its nonrenewal otherwise complies with the PMPA. In particular, Tosco must prove that its proposed changes in the franchise were made "in good faith and in the normal course of business," 15 U.S.C. § 2802(b)(3)(A)(i), and that the failure of the plaintiffs and Tosco to agree to the changes "is not the result of the franchisor's insistence upon such changes ... for the purpose of ... preventing renewal of the franchise relationship." 15 U.S.C. § 2802(b)(3)(A)(ii). In determining "good faith," the courts are prohibited from

> second-guessing of "the economic impact of an otherwise legitimate business decision by the franchisor. So long as the franchisor does not have a discriminatory motive or use the altered terms as a pretext to avoid renewal, the franchisor has met the burden required by the PMPA for determining good faith."

*Valentine,* 789 F.2d at 1392 (quoting *Baldauf v. Amoco Oil Co.,* 553 F.Supp. 408, 412 (W.D.Mich.1981)). "[C]ourts should look to the franchisor's intent rather than to the effect of his actions, making this a subjective test." *Svela,* 807 F.2d at 1501. The fact that

a proposed change, such as a rebrand, "might make it difficult for [a dealer] to remain in business and earn a profit is irrelevant to a finding of good faith." *Id.* (emphasis added).

Because the issue of Tosco's good faith is raised on a motion for summary judgment, Tosco is entitled to a judgment on plaintiffs' PMPA claim only if based on the record before the Court no reasonable trier of fact could find for the plaintiffs. *See Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### 1. The Rebrand Decision.

Tosco has offered sufficient evidence to establish that it made the decision to rebrand in good faith and in the normal course of business. The evidence demonstrates that after it purchased the Union 76 stations in California it began to study whether it would be more efficient to market motor fuel in California under a single brand instead of under the Union 76 and BP brands. After studying the issue for several months, Tosco decided to market its motor fuel solely under the Union 76 brand. Tosco's decision was based upon, among other things, the following: its perception that Union 76 has the better public image, the greater market share of Union 76 in California, the number of Union 76 versus BP credit card users, the fact that it owns the Union 76 trademark whereas it only licenses the BP mark which license is scheduled to expire in 2006, the fact that the license fee for the BP trademark is set, by contract, to increase in 1999, and the greater economic efficiencies to Tosco of marketing only one brand in California.

Plaintiffs have not produced any evidence from which a reasonable trier of fact could conclude that Tosco's decision to rebrand was not made in good faith and in the normal course of business or for the purpose of preventing renewal. The alleged fact that the ultimate decision maker at Tosco did not review any written reports on the rebrand issue before approving the capital expenditure for the rebrand does not suggest that the rebrand decision was a subterfuge for preventing renewal. Similarly, the fact that Tosco markets its motor fuel in Arizona under two brands (not including BP) is immaterial to whether Tosco's decision to eliminate the BP brand in California was made in good faith. Plaintiffs' expert's testimony which disputes that Union 76 is the stronger brand in California does not create a dispute of material fact; the Court may not second guess Tosco's business judgment. *See Valentine,* 789 F.2d at 1392.

Plaintiffs also claim that the terms of the franchise agreements offered to them differ materially from that offered to the Union 76 stations. The Court has reviewed the Union 76 agreement and the agreement proposed to the BP dealers and concludes that the agreements are not materially different. The alleged fact that the terms of the proposed franchise are more onerous than those under the expired franchise agreements is irrelevant to the good faith determination, even if those terms may cause some plaintiffs to go out of business. *See Svela,* 807 F.2d at 1501. The issue in a PMPA matter is Tosco's intent. Here there is no evidence from which a reasonable trier of fact could conclude that Tosco had an ulterior motive concerning its proposed changes to plaintiffs' franchises.

### 2. The Conflict Service Stations.

Plaintiffs' primary argument is that Tosco's decision to rebrand those BP service stations which compete with a Union 76 station was not made in good faith because the two competing stations will not be able to survive if both are operated as Union 76 stations. Tosco's evidence shows, however, that it specifically considered whether to rebrand "conflict" stations. In particular, it identified 33 stations which it believed were conflict stations and decided to divest itself of nearly a third of those stations; that is, it made a business judgment that in a third of the conflict situations two Union 76 stations could not operate successfully. In those situations it is selling either the BP or the Union 76 station. With respect to the remaining conflict stations, Tosco's evidence shows that it made a business judgment that two Union 76 stations can compete successfully.

Plaintiffs have not produced any evidence from which a reasonable trier of fact could conclude that Tosco does not believe that the

remaining "conflict" stations can compete and that it decided to go forward with a rebrand of those stations for the purpose of preventing renewal of the franchise relationship. Plaintiffs may disagree with Tosco's business judgment, but they offer no evidence that Tosco did not make such a business judgment. The alleged fact that Tosco failed to consider the impact of the rebrand of the conflict stations on the plaintiff franchisees is not evidence of bad faith. Accordingly, Tosco is entitled to judgment on plaintiffs' PMPA claim.

## II. THE BREACH OF CONTRACT CLAIM.

Plaintiffs' second cause of action alleges that (1) Tosco did not give plaintiffs six months notice of the rebrand as required by paragraph 6 of the franchise agreement, and (2) Tosco violated paragraph 17(d) which requires "reasonable notice" of a rebrand, and (3) that the rebranding violates the covenant of good faith and fair dealing implied in the franchise agreements. *See* First Amended Complaint ¶ 53.

### A. *Paragraph 6 of the Franchise Agreement.*

■ Plaintiffs' breach of contract claim fails because Tosco did not seek to rebrand during the term of plaintiffs' franchise agreement. Paragraph six requires six months notice for changes which "expand or narrow the goods and services available at any time during the term" of the franchise agreement. Assuming, without deciding, that a change in the trademark under which motor fuel is marketed is an expansion or narrowing of the goods and services available, it is not an expansion or narrowing of such goods or services "available at any time during the term" of the franchise agreement. Tosco sought to rebrand *after* the franchise agreement had expired. Thus, Tosco's failure to give six months' notice of the rebrand cannot as a matter of law have violated paragraph six of the franchise agreement.

### B. *Paragraph 17(d).*

Tosco did not violate paragraph 17(d) of the franchise agreement for the same reason it did not violate paragraph 7: Tosco did not seek to rebrand during the term of the franchise agreement.

### C. *Implied Covenant of Good Faith and Fair Dealing.*

■ Plaintiffs contend that Tosco's decision to rebrand the plaintiff BP stations to Union 76 and, with respect to some of the plaintiffs, place them in direct conflict with preexisting Union 76 stations is a violation of the implied covenant of good faith and fair dealing. *See In re Vylene Enterprises, Inc.,* 90 F.3d 1472, 1477 (9th Cir.1996) (affirming district court's determination that defendant franchisor violated the implied covenant of good faith and fair dealing under California law by constructing a competing restaurant within a mile and a half from plaintiff franchisee's restaurant during the term of the franchise agreement). Plaintiffs' claim fails as a matter of law for two reasons.

First, Tosco did not seek to place plaintiffs in direct competition with preexisting Union 76 stations during the term of the franchise agreement. Since the franchise agreement has expired there can be no breach of that agreement, including any implied obligations arising from that agreement. *Pride v. Exxon Corporation,* 911 F.2d 251 (9th Cir.1990), in which the court appears to have recognized that a franchisor might violate an implied covenant of good faith and fair dealing by operating a competing service station, is distinguishable for this reason. In *Pride* the franchise agreement had not expired and was still in effect.

Second, to the extent plaintiffs contend that the implied covenant of good faith and fair dealing survives expiration of their franchise agreements, plaintiffs' claim is preempted by the PMPA. The PMPA provides that

> no State ... may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination ... of any such franchise or to the nonrenewal ... of any such franchise relationship unless such provision of such law or regulation is the

same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a). "This provision of the Act effectively preempts state law governing petroleum franchise terminations and nonrenewals and required notices therefor." *Pride*, 911 F.2d at 257. The Ninth Circuit has held that "section 2806(a) provides for preemption of *all* state law inconsistent with the PMPA." *Simmons v. Mobil Oil Corp.*, 29 F.3d 505, 511 (9th Cir.1994).

Plaintiffs' state law claim is inconsistent with the PMPA since plaintiffs ask the Court to conclude that under the implied covenant of good faith and fair dealing Tosco cannot condition renewal of the franchise relationship upon a rebrand where the rebrand would place a particular plaintiff in direct competition with a preexisting Union 76 station. As is set forth above, the PMPA does not prohibit such conduct. Accordingly, plaintiffs' state law implied covenant claim is preempted by the PMPA.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. The preliminary injunction issued on April 9, 1998 is hereby DISSOLVED. The parties are directed to file a joint submission with the Court within 30 days of the date of this order which advises the Court on how this action should proceed.

**IT IS SO ORDERED.**